### SCHUYLER v. UNITED AIR LINES, Inc.
### Civ. A. No. 3304.

United States District Court
M. D. Pennsylvania.
April 5, 1950.

Ralph P. Needle, Needle, Needle, & Needle, Scranton, Pa., Guy E. Ward, Beverly Hills, Cal., Douglas N. Sharretts, Baltimore, Md., for plaintiff.

Eugene Nogi, Nogi, O'Malley & Harris, Scranton, Pa., Owen B. Rhoads, Arthur E. Newbold, III, of Barnes, Dechert, Price, Myers & Clark, Philadelphia, Pa., for defendant.

WATSON, Chief Judge.

After this case was set for trial to begin April 3, 1950, counsel for plaintiff presented to the Court on March 31, 1950, a motion for Production of Documents, etc., under Rule 34 of the Federal Rules of Civil Procedure.[1] The motion contains requests in 29 separate paragraphs for documents of various descriptions. On presentation of the motion, the Court requested counsel in the case to confer together and, if possible, to stipulate as to the production of certain of the documents, etc. requested. After the jury was selected and sworn, counsel, on the morning of April 4, 1950, informed the Court that no stipulation had been entered into. Thereupon, the Court held a hearing and heard arguments for and against the production of the various documents, etc.

It appears that, as to requests for production referred to in Paragraphs 8, 9, 11, 12, 13, 15, 17, 19, 22, 25, 26, and 29, the defendant does not have same in its possession, custody or control, and, therefore, the motion for the production of the documents, papers, books, etc. referred to in said paragraphs will be denied.[2]

The eighteenth paragraph of plaintiff's request for production reads as follows: "Original, or copy of, report to United Air Lines from Massachusetts Institute of Technology, or by and from any technical consultant employed by or on the staff of instructors or professors at said Institute, with respect to position of cabin pressure relief valve after crash of airplane NC-37506 on June 17, 1948, near Mt. Carmel, Pennsylvania." It appears that in the accident investigation report of the Civil Aeronautics Board, referring to the airplane accident involved in this litigation, which report was released August 2, 1949,

1.  28 U.S.C.A.

2.  Baldwin v. Newhall, D.C.M.D.Pa. 1948, 8 F.R.D. 368.

there is the following language: "The study made on behalf of United by M.I.T. resulted in a preliminary report received April 26, 1949 * * *. The Board, thereupon, entered upon a final analysis and study of the evidence including the reports above described, only one of which, the M.I.T. report, concluded that the cabin pressure relief valves were open."

■ There is nothing to show that the report by the Massachusetts Institute of Technology, referred to above, was the report referred to in plaintiff's request in paragraph 18. It does appear that the Massachusetts Institute of Technology, or some one on the staff of instructors or professors of that institute, made a report to and upon the request of the attorneys for the United Air Lines, Inc., when litigation was threatened or pending. Such has been held to be privileged, and it has been held that evidence obtained by an attorney or at his instance after litigation has been commenced or threatened, or with a view to the defense or prosecution of such litigation is protected even if obtained by the client.[3] In McCarthy v. Palmer,[4] Judge Moscowitz said in the opinion: "While the Rules of Civil Procedure were designed to permit liberal examination and discovery, they were not intended to be made the vehicle through which one litigant could make use of his opponent's preparation of his case. To use them in such a manner would penalize the diligent and place a premium on laziness. It is fair to assume that, except in the most unusual circumstances, no such result was intended." It cannot be held that the defendant waived its rights to protection because the report referred to in the report of the Civil Aeronautics Board was said to have been made as the result of study on behalf of United by M.I.T. Furthermore, the M.I.T. report referred to in the Civil Aeronautics Board's report is not referred to in full, but there is a reference to it only, and that reference is to a conclusion. For reasons stated and others, it is my opinion that the request for production of document designated in Paragraph 18 should be denied.

■ Rule 34 authorizes the Court to order production of documents, etc., upon motion of a party "showing good cause". The Court must be satisfied that the production of the requested document is necessary to enable a party to properly prepare his case, or that it will facilitate proof or progress at the trial.[5] It is my opinion that, under a proper construction of Rule 34, the defendant should be required to produce the documents, papers, books, etc., designated in Paragraphs 1, 2, 5, 6, 7, 10, 16, 20, 21, 27, and certain of those documents, papers, books, etc., designated in paragraphs 3 and 4, and a proper order for their production will be made.

■ The documents designated in paragraphs 14, 23, 24, and 28 for the most part refer to acts of the defendant in providing work and materials to airplane NC–37506 between November, 1947 and June 17, 1948. The plaintiff has shown to the satisfaction of the Court that the production of most of the documents requested is necessary to enable her to properly prepare her case, but whether the documents embody evidence that is material to this cause is doubtful. However, it is not the duty of the plaintiff to prove materiality. It does appear that it is reasonably probable that the documents sought to be examined constitute or contain material evidence, and that is sufficient. The question as to whether they do embody evidence that is material will be determined if and when it arises in the trial of the case, and no prejudice can result from a direction to the defendant at this time to produce the documents designated in paragraphs 14, 23, 24 and 28. In paragraph 24, the plaintiff requests the production of " 'proof' that Airplane Flight Manual for Airplane NC–37506 was revised to include CAA Approved Procedures covering 'Fuel Usage', 'Fire Fighting' and 'Smoke Evacuation from the Cockpit'." Rule 34 provides for the production and in-

3. Lewis v. United Air Lines Transport Corp., D.C.W.D.Pa. 1940, 32 F.Supp. 21.
4. D.C.E.D.N.Y.1939, 29 F.Supp. 585, 586.
■

5. Hickman Adm'r v. Taylor, 1947, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 and United States v. 5 Cases, etc., D.C.Conn. 1949, 9 F.R.D. 81.

114

spection of designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, and does not provide for the production of proof. A proper order will be made directing the production of the documents, records, papers, or tangible things designated in paragraphs 14, 23, 24, and 28.

Order

Now, April 5, 1950, it is ordered and directed that United Air Lines, Inc., defendant, produce and permit Jessie I. Schuyler, ancillary executrix of the estate of Earl Carroll, deceased, plaintiff, through her counsel, to inspect and to copy or photostat, if counsel so desire, the documents, books, records, papers, pamphlets and bulletins, as follows:

1. The "squawk sheet" of Capt. John M. Roberts, Crew Captain of Airplane NC–37506, on Flight 624 from Los Angeles to Chicago, June 16–17, 1948;

2. All records, papers, documents, work sheets, and inspection reports of mechanical, electrical, and any other maintenance crews servicing Plane NC–37506 prior to take-off on Flight 624 from Chicago, Illinois, en route to New York City, June 16–17, 1948;

3. United Air Lines Operating Manual for DC–6 Pilot and Co-Pilot in force, in effect, and in use during the months of May and June, 1948; and in particular, the training instruction pertaining to emergency procedure in the event of fire or false alarm of fire;

4. Copy of Douglas Aircraft Operating Manual in effect during the months of May and June, 1948, pertaining to DC–6 Airplane NC–37506;

5. Work sheet, check list and inspection reports showing repair of hyraulic lock, engine number two, trip 624, June 16, 1948, Airplane NC–37506;

6. United Air Lines Maintenance Service Bulletin "DC–6 Maintenance," dated April 27, 1948;

7. "Squawk sheet" and full report of Captain L. L. Jones concerning trip to Seattle and thence to Los Angeles, June 16, 1948, Airplane NC–37506, and work sheets and inspection reports showing corrective measures taken at Seattle and Los Angeles to remedy complaints referred to in Captain Jones' report.

10. Copy of "scroll" of the cockpit coordinator containing emergency procedures and carried aboard Airplane NC–37506 on Flight 624, Seattle, Los Angeles, Chicago, New York, June 16 and 17, 1948.

16. Telegram dated June 10, 1948, to United Air Lines from the Air Transport Association suggesting tests to determine possible oxygen deficiency in cockpit when $CO_2$ bottles are pulled in cargo compartment, and answers to same.

20. Copy of United Air Line Syllabus (approved by Civil Aeronautics Authority) in use at Denver Training Center, Denver, Colorado, during the months of January through June, 1948, and used in the training of crew personnel in "Refresher Course" with regard to the operation of the DC–6 Airplane.

21. Original copy of "Master Log" United Airlines operated DC–6 No. NC–37506.

27. Copy of "CAA Approved Airplane Operating Manual" revised dated February 26, 1948, and in effect on June 17, 1948; this manual may be known to Defendant as "Douglas Approved Operating Manual", as approved by the CAA.

14. All records, pre-flight inspection reports, books, papers, "squawk sheets", work-sheets, check-lists of and by mechanics or technicians, including flight crews, and all other documents in possession of the defendant pertaining to the modification for re-certification and maintenance of Airplane NC–37506 following withdrawal from service in November, 1947, and up to and including June 17, 1948.

23. All United Air Line file copies of Douglas Service Bulletins having any material reference to the re-certification requirements of Airplane No. NC–37506, following the grounding of said airplane in November, 1947, up to and including the date of re-certification of said airplane.

24. All work sheets, check-lists, inspection reports, and any and all other books, papers, records, showing work done, names

of individual workmen and inspectors performing such work and date of compliance with each and every of said Douglas Service Bulletin above referred to and more particularly set forth as follows:

(Airworthiness Directive March 8, 1948)—

Douglas Service Bulletins DC–6 Nos. 204A, dated December 18, 1947; 204B, Feb. 1948; 200 Feb. 26, 1948; 201, Dec. 6, 1947; 202, Dec. 9, 1947; 208, Feb. 20, 1948; 226, Feb. 1948; 226, Feb. 21, 1948; 226, Feb. 12, 1948; 226, Feb. 26, 1948; 226, Feb. 24, 1948; 233, Jan. 14, 1948; 247, Feb. 18, 1948; 252, Feb. 17, 1948; 262, Feb. 24, 1948; 258, 225, Feb. 24, 1948; 246, Feb. 17, 1948; 224, Feb. 24, 1948; 217, Dec. 23, 1947; 214, Feb. 16, 1948; 230, Feb. 16, 1948; 149, Dec. 5, 1947; 237, Feb. 21, 1948; 248, Feb. 13, 1948; 212, Jan. 7, 1948; 206, Dec. 9, 1947; 218, Dec. 17, 1947; 221, Dec. 20, 1947; 210, Dec. 22, 1947; 213, Dec. 1947; 242, Feb. 17, 1948; 203, Feb. 17, 1948; 260, Feb. 24, 1948; 267, Feb. 27, 1948; 205, Feb. 23, 1948; 207, Dec. 19, 1947; 253, Feb. 24, 1948; 219, Dec. 19, 1947; 114, Oct. 29, 1947; 261, Feb. 25, 1948; 249, Feb. 24, 1948; 232, Feb. 16, 1948; 234, Jan. 23, 1948; 62, Sept. 2, 1947; 111, Oct. 22, 1947; 119, Dec. 6, 1947; 16, June 26, 1947; 161, Jan. 20, 1948; 95, Oct. 21, 1947; Douglas Service Letter Dec. 29, 1947 to United Air Lines (Reference A214TS–2521/WRD529.37);

(Airworthiness Directive Mar. 15, 1948)—

Douglas Service Bulletins DC–6 Nos. 223, Feb. 24, 1948; 38, Oct. 6, 1947; 250, Feb. 19, 1948; 211, Feb. 23, 1948; 227, Feb. 24, 1948; 243, Jan. 26, 1948; 245, Feb. 24, 1948; 40, Sept. 3, 1947; 71, Sept. 3, 1947; 96, Dec. 22, 1947; 141, Feb. 19, 1948; 150, Dec. 1947; 160, Feb. 2, 1948; 179, Dec. 29, 1947; 28, Aug. 20, 1947; 258, Feb. 13, 1948; 257, Feb. 18, 1948; 13, Aug. 28, 1947, and to produce all work sheets, check-lists, inspection reports and any and all other papers, books, and documents, showing compliance by the United Air Lines, Inc. with the terms and provisions and requirements of Civil Air Regulations, Amendments 41–3, 42–2, and 61–2, as well as Douglas Service Bulletin No. 62 "Install Smoke Detector in Belly Baggage Compartment"; Service Bulletin 66 "Engine Section Piping and Fitting Revision."

28. Original records, books, work sheets, inspection reports, of the United Air Lines, Inc., showing what, if any, compliance was made by the defendant with the requirements of the following Civil Air Regulations in existence and effect on June 17, 1948; Sections O4b.49; O4b.38251; O4b.-38251(a); O4b.38251(b); O4b.38251(c); O4b.38252; and O4b.4910.

It is further ordered that the documents, books, records, papers, pamphlets and bulletins, which defendant is herein ordered to produce, be produced by the defendant in Court Room No. 1, Federal Building, Scranton, forthwith, and be made available to the plaintiff, through her counsel, for inspection and copying or photostating, if counsel so desire.

Plaintiff's Motion for Production of Documents is denied as to those documents, etc., designated in paragraphs 8, 9, 11, 12, 13, 15, 17, 19, 22, 25, 26, 29 and 18.