**SCHUYLER v. UNITED AIR LINES, Inc.**
Civ. No. 3304.

United States District Court
M. D. Pennsylvania.
Dec. 18, 1950.

Ralph P. Needle and Needle, Needle & Needle, all of Scranton, Pa., Guy E. Ward, Beverly Hills, Cal., Douglas N. Sharretts, Baltimore, Md., for plaintiff.

Eugene Nogi and Nogi, O'Malley & Harris, all of Scranton, Pa., Owen B. Rhoads, Arthur E. Newbold, III, and Barnes, Dechert, Price, Myers & Clark, all of Philadelphia, Pa., and David L. Corbin, New York City, for defendant.

WATSON, Chief Judge.

This is a suit by Jessie I. Schuyler, Ancillary Executrix of the Estate of Earl Carroll, deceased, Plaintiff, against the United Air Lines, Inc., Defendant, under the Pennsylvania "Survival" Statute[1] for damages for the death of Earl Carroll, who was killed instantly when Defendant's Douglas DC-6 Aircraft No. NC-37506 on which he was a passenger crashed near Mt. Carmel, Pennsylvania, about 12:41 P.M., on June 17, 1948. The case was tried before the Court and a jury. The jury returned a verdict in favor of the Defendant.

The case is now before the Court on Plaintiff's Motion to set aside the verdict and judgment entered thereon, and for a new trial. At the oral argument on the Motion, counsel for Plaintiff urged only one reason as ground for granting the motion, although other reasons stated in the written motion were not withdrawn. The reason urged was that the Court committed prejudicial error in connection with questions concerning certain documents, and photostatic copies thereof, referred to throughout the trial as the "Zell Report".

After this case was set for trial to begin April 3, 1950, counsel for Plaintiff presented to the Court, on March 31, 1950, a Motion for Production of Documents, etc., under Rule 34 of the Federal Rules of Civil Procedure.[2] The Motion contained requests in twenty-nine separate paragraphs for documents of various descriptions, including a request in paragraph 22 for "Copy of report by Mr. Louis Zell, Chief of Communications, United Air Lines, per-

---

1. Act of July 2, 1937, P.L. 2755, 20 P.S. c. 3, Appendix, § 772.

2. 28 U.S.C.A.

taining to interpretation of recordings of radio contact between Flight 624 United Air Lines, June 16-17, 1948, between the hours of 12:30 E.S.T., and 12:45 E.S.T., June 17, 1948." On April 3, 1950, a jury was sworn to try the case, and on April 4, 1950, and April 5, 1950, an argument was held in Chambers on Plaintiff's Motion for Production of Documents, etc. On April 5, 1950, Opinion and Order [3] were filed by this Court granting in part and denying in part Plaintiff's Motion for Production of Documents, etc. This Opinion, in referring to paragraph 22 of Plaintiff's Motion, stated: "It appears that, as to requests for production referred to in Paragraphs * * * 22 * * * the defendant does not have same in its possession, custody or control, and, therefore, the motion for the production of the documents, papers, books, etc., referred to in said paragraphs will be denied. Baldwin v. Newhall, D.C.M.D.Pa.1948, 8 F.R.D. 368." This Order stated: "Plaintiff's Motion for Production of Documents is denied as to those documents, etc., designated in paragraphs * * * 22 * * *" Proceedings in the case were adjourned from April 6, 1950, to April 18, 1950, to give Defendant an opportunity to comply with the Court's Order of April 5, 1950.

Mention of the "Zell Report" appears in the record again on April 26, 1950, during Defendant's presentation of its case. Counsel for Plaintiff, during his cross-examination of John M. Roberts, a defense witness, called upon the Defendant to produce " * * * a transcription of a radio contact between flight 624, being Airplane NC-37506, United Air Lines operated between Chicago and LaGuardia, between the hours of 12:30 and 12:45 E.S.T., on the afternoon of June 17, 1948, which have been identified as broadcasts * * * ", then stated, "May I substitute two words—analysis of report or summary, or whatever word would indicate a paper in writing showing what was on the tape that we are talking about?", and then stated, "And may I substitute in my request a request for interpretation as well?" Counsel for Defendant replied to the last of these requests that he did not have such an interpretation. Later during the same cross-examination, counsel for Plaintiff called upon Defendant "to produce any other papers, interpretations, or any other data pertaining to transmission between Flight 624 and the United Air Lines operated radio broadcasting transmitter at LaGuardia between the hours of 12:30 and 12:45 in the afternoon of June 17, 1948" to which counsel for Defendant replied that he had "no other papers which come within that category between the times mentioned." On the same day during conference in Chambers counsel for Plaintiff urged his request for the "Zell Report" or a copy thereof, and counsel for Defendant repeated, "We have no such document." Counsel for the Plaintiff then produced photostatic copies of three documents, later marked Plaintiff's Exhibits 30, 31 and 32 for identification, which he contended were photostatic copies of the "Zell Report", and counsel for the Defendant stated that there was no such document in his possession or in the possession of his client. At this same conference counsel for Plaintiff offered these three photostatic copies in evidence, then stated that if he said he offered them in evidence he meant he wanted to use them in examination of a witness on cross-examination, and the Court pointed out that it was not necessary to offer them in evidence in order to use them in cross-examination. Counsel for Defendant pointed out that these photostats were numbered and that two were stamped "Civil Aeronautics Board", and that that was where the papers were, if there were such papers. Counsel for Plaintiff then offered the three photostatic copies not in evidence but for the "possible amendment of your Honor's ruling in your opinion of April 5 in reply to our motion for documents". Counsel for Defendant stated that neither he nor the Defendant had the original or copy of such report. Counsel for Plaintiff then stated that he did not want to offer the photostats in evidence now but suggested

3. D.C.M.D.Pa.1950, 10 F.R.D. 111.

the use of the photostats on the showing that there were no other originals or copies, the copies being in the hands of the Civil Aeronautics Board and not subject to subpoena, and the Court stated it would consider that when it came up. Counsel for Defendant stated that he had never seen what was contained in the photostats before.

The "Zell Report" is mentioned again in the record on May 1, 1950, during Plaintiff's rebuttal, when counsel for Plaintiff offered in evidence what purported to be photostatic copies of the "Zell Report", which were later marked Plaintiff's Exhibits 30, 31, and 32 for identification. Counsel for Defendant objected to their admission because they were secondary evidence without proof of the signatures; because the documents expressed the opinion of an expert of his interpretation of a tape recording when no expert opinion was necessary, the tape recording being present in Court and available for use; because they were hearsay, not within the exception provided for records made in the regular course of business; and because they were a part of a record of a hearing before the Civil Aeronautics Board and thereby inadmissible in a civil trial. The objection to the admission in evidence of these photostatic documents marked Plaintiff's Exhibits 30, 31, and 32 for identification was sustained. This ruling is in complete accord with the law on the admission of secondary evidence as expressed by the Pennsylvania Supreme Court in Brenner v. Lesher,[4] which held that when an original writing is not available a copy of it is admissible in evidence when properly proven as such. Wigmore states the rule as follows: "A paper offered as a copy but not supported by any person's testimony in Court is a hearsay—i. e. extrajudicial—statement, obnoxious to the Hearsay Rule. Hence, some person must be called to the stand to verify the paper as the copy that it purports to be. A paper offered anonymously as a copy or offered without calling some witness to verify it is inadmissible. This principle, never disputed, is, with occasional lapses, constantly enforced in excluding supposed copies * * * " [5]

The following day Plaintiff offered by various witnesses to qualify and identify the photostatic copies referred to as the "Zell Report". First Plaintiff offered to prove by Edward Moriarity that he was a private detective, who on April 29, 1950, was handed a civil subpoena of this Court addressed to Lucian M. Zell, Chief of Communications, United Air Lines, Inc., LaGuardia Airport, New York City, New York, demanding him to appear and testify on behalf of the Plaintiff; that pursuant to the assignment of service of this subpoena, he went to LaGuardia Airport, New York, on Sunday, April 30, 1950, and was directed to the home of Lucian M. Zell at 3418 91st Street, Jackson Heights, New York; that Lucian M. Zell was not at the airport or at his home; that he talked to Mrs. Lucian M. Zell and was advised by her as well as by persons at LaGuardia Airport that Lucian M. Zell had gone to Denver, Colorado on April 27, 1950; and that he left copies of the subpoena at the home of Zell. This offer was objected to by counsel for the Defendant on the ground that it was not rebuttal; that it was not evidence of valid service because there was no evidence that Jackson Heights was in the jurisdiction of the process of this Court, that it was an attempted Sunday service, and therefore invalid on its face; that what someone told this witness was hearsay; and that the proof offered was irrelevant. The objections to this offer of proof were properly sustained by the Court.

Plaintiff's next attempt to qualify and identify the "Zell Report" was the calling of John S. Chapman as a witness. He testified that he met Lucian M. Zell on one occasion, but never saw him sign his name and did not know his signature.

Finally, Plaintiff attempted to qualify and identify the "Zell Report" by calling as a witness, David L. Corbin, Esquire, an attorney of record for Defendant

4. 1938, 332 Pa. 522, 2 A.2d 731.

5. Wigmore, Section 1281.

in this case, who testified that he could not identify the signature on Plaintiff's Exhibit No. 30 for identification, and that he never saw Lucian M. Zell sign his name. He also testified: "I have thought that I have seen a signature that was his (Zell's) signature, but I did not know it to be," and "I have seen a signature which bore the name Lucian M. Zell." When asked to compare the signature on a document handed to him by counsel for Plaintiff with the signature on Plaintiff's Exhibit No. 30 for identification and to state whether the signatures were the same, there was an objection by counsel for Defendant which was sustained by the Court for the reason that Plaintiff had not shown that either of the two signatures, or the one on the document handed to Corbin by counsel for the Plaintiff, was acknowledged to be the signature of Mr. Zell—this Mr. Zell, and for the reason that Plaintiff had not shown that the witness was competent to compare signatures as an expert. This ruling is in accord with both the United States and Pennsylvania Statutes governing comparison of handwriting. The United States Statute provides: "The admitted or proved handwriting of any person shall be admissible, for purposes of comparison, to determine genuineness of other handwriting attributed to such person." [6] The Pennsylvania Statute provides: "It shall be competent for experts in giving their testimony, under the provisions of this act, to make comparison of documents and comparison of disputed handwriting with any documents or writing admitted to be genuine, or proven to the satisfaction of the judge to be genuine, and the evidence of such experts respecting the same shall be submitted to the jury as evidence of the genuineness or otherwise of the writing in dispute." [7] Under Rule 43 of the Federal Rules of Civil Procedure [8] the statute or rule which favors the reception of evidence governs and the competency of a witness to testify shall be determined in a like manner. The ruling of this Court was proper under both statutes.

Plaintiffs did not seek further the admission into evidence of the "Zell Report". Mention of the report was made in the closing speeches of counsel. Counsel for Defendant made these remarks in this connection: "The second thing, that Mr. Corbin and I know a message (referring to the 'Zell Report'), I say that is a deliberate misstatement. I do not know the contents of any message and Mr. Corbin does not, and that was made only in an effort to disparage us." These remarks were not improper or prejudicial to the Plaintiff.

No order, ruling, or anything done or omitted by the Court or by any of the parties in connection with the "Zell Report" or any related matters affected the substantial rights of the Plaintiff. Furthermore, the best evidence of the radio contact between Flight 624 United Air Lines and LaGuardia Airport between the hours of 12:30 and 12:45 P.M., E.S.T., June 17, 1948, was the recording itself. This recording was played twice in the presence of the jury during the course of the trial. An opinion of the interpretation of the voices on this recording was also given by an expert produced by the Plaintiff. Dr. L. G. Lederer testified to certain words he had distinguished after a study of the recording and stated that in his opinion the voices on the recording were abnormal for definite reasons, which he explained. Clifford C. Stanford, the radio operator at LaGuardia Airport who received the last message from Flight 624 on June 17, 1948, testified that it was a garbled message of which he was unable to distinguish any words whatsoever and that the voices were high and excited, urgent but unintelligible. Dr. Lederer, an expert in the field of airplane medicine, and Mr. Stanford, receiver of the original message, were two witnesses as well qualified as any to aid the jury in interpreting the message, and their testimony and the playing of the tape itself constituted the best evidence of the message. The "Zell Report", even if properly authenticated, which the facts above clearly

---

6. 28 U.S.C.A. § 1731.

7. May 15, 1895, P.L. 69, § 2, 28 P.S. § 162.

8. 28 U.S.C.A.

demonstrate was not done, and even if admissible over other objections, which it was not necessary for the Court to determine, would have added little or nothing new to the evidence already admitted concerning the radio contact between LaGuardia Airport and the airplane immediately prior to its crash near Mt. Carmel, Pennsylvania, on June 17, 1948.

On the day set for oral argument of Plaintiff's Motion for New Trial, Plaintiff filed a Motion for Admission of Validity of Documents requesting the Defendant to make three admissions to aid the Court in the determination of the issues pending on Motion for New Trial. These admissions requested were: that an attached copy of complaint is genuine and is a complaint served by Defendant against Douglas Aircraft Company, Inc., on August 22, 1950, in the Supreme Court of New York, County of New York; that the affidavit of the Vice President Finance, United Air Lines, Inc. in support of said complaint was executed August 18, 1950; and that Messrs. Haight, Deming, Gardner, Poor and Havens, counsel of record for United Air Lines, Inc. in said complaint are the same counsel represented by D. L. Corbin, Esquire, one of the counsel for United Air Lines, Inc. in this litigation. At the oral argument, counsel for Defendant stated that he was willing to admit that the attached copy was a true and correct copy of a pleading in a suit between United Air Lines, Inc. and Douglas Aircraft Company, Inc. · Counsel for Plaintiff then stated that the motion was only an additional reason for a new trial. During the oral argument, Plaintiff moved orally in two separate motions to continue the hearing on the motion for new trial to permit taking of depositions and the filing of additional pleadings, notices and documents to prove genuineness of copy of said complaint; to allow time to take said depositions to show that Defendant had possession of information and documents referred to by verification of Vice President Barkes of Defendant at time of trial and to show that Plaintiff had no method of knowing or determining with the exercise of due diligence that Defendant had such information until said complaint was served in New York; that a copy of said complaint served in New York be considered as additional grounds to Plaintiff's Motion for New Trial; and that same be considered as filed nunc pro tunc. Defendant answered these motions orally, objecting mainly on the ground that the filing of such motions at that time was improper procedure. The Court dismissed both motions. More than a month after the oral argument, on December 4, 1950, Plaintiff filed these two motions in written form, adding thereto descriptive titles, as follows: Motion for Leave to Take Depositions in Support of Motion for New Trial under Rule 59; and Motion to Include Newly Discovered Evidence in Record on Motion for New Trial under Rule 59.

 These three motions when viewed as setting forth additional reasons for granting a new trial must be denied because served later than ten days after entry of the judgment and therefore not timely under Rule 59(b) of the Federal Rules of Civil Procedure.[9] Under Rule 6 (b) of the Federal Rules of Civil Procedure,[10] the Court may not extend the time for taking action under Rule 59(b). Viewed as motions under Rule 60(b) (2) of the Federal Rules of Civil Procedure[11] for a new trial for newly discovered evidence, the three motions must be denied because the facts alleged in support of the motions do not constitute newly discovered evidence within the rule. The phrase "newly discovered evidence" refers to evidence of facts in existence at the time of the trial, of which the aggrieved party was excusably ignorant.[12] On its face the complaint and the affidavit thereon served in the New York Court show that they were not in existence until August 18, 1950, more than

9. 28 U.S.C.A.

10. 28 U.S.C.A.

11. 28 U.S.C.A.

12. Campbell v. American Foreign S. S. Corp., 2 Cir., 1941, 116 F.2d 926, 928, certiorari denied 313 U.S. 573, 61 S.Ct. 959, 85 L.Ed. 1530; U. S. v. Bransen, 9 Cir., 1944, 142 F.2d 232.

three months after the completion of this trial.

The other reasons assigned by Plaintiff in his written Motion for New Trial were not urged by the Plaintiff at the oral argument. In the opinion of this Court, those reasons are without merit.

There were no errors on rulings on evidence prejudicial to the Plaintiff. The verdict was not contrary to the law, the evidence or the weight of the evidence. The Plaintiff did not take exception to any part of the charge of the Court.

It is the conclusion of this Court that the record shows no error in the trial that was prejudicial to or affected the substantial rights of the Plaintiff. The verdict was supported by legal evidence, and the Plaintiff has failed to advance any valid reasons why a new trial should be granted. Plaintiff's Motion to Set Aside the Verdict and Judgment entered thereon and for a New Trial should be denied, as should Plaintiff's Motion for Admission of Validity of Document, Plaintiff's Motion for Leave to Take Depositions in Support of Motion for New Trial under Rule 59, and Plaintiff's Motion to Include Newly Discovered Evidence in Record on Motion for New Trial under Rule 59.

An appropriate Order will be filed herewith.