**Hildegarde H. BACHTLE, Petitioner,**

v.

**Edward R. BACHTLE, Respondent.**

Family Court of Delaware,
New Castle County.

Submitted: Sept. 9, 1983.
Decided: Oct. 11, 1983.

Gerald Z. Berkowitz, Wilmington, for petitioner.

S. Bernard Ableman, Wilmington, for respondent.

GALLAGHER, Judge.

On July 18, 1983, petitioner (wife) moved the court to reopen the ancillary matters in the above case seemingly concluded by an opinion dated November 23, 1982, and my decision on motion for reargument dated December 9, 1982. Wife refers to the evidence at the hearing relating to the valuation of the former marital domicile under which her expert valued the property at a low of $172,000 (and said that it could easily sell for more than $200,000) and respondent's (husband's) expert valued the property at $150,000. Wife points out, correctly, that the valuation opinion offered by husband's expert was accepted by the court. Now, according to wife, husband has sold the property for $218,000 with little or no improvement made since the day of the hearing.

The relevant finding of the court as set forth in the opinion of November 23, 1982, is as follows:

> At the trial husband estimated the fair market value of the former marital home to be $150,000. This is the same figure that was testified to by realtor Robert Witsil who also declared the condition of the property is fair to poor. Mr. Witsil commented that if the property were listed at $172,000 it would not sell. The other expert who testified to value was David A. Hill, who claims fair market

value to be $172,000, and that he would list the property for $195,000.

Wife takes the position that the value should be $172,000 less 8½% cost of sale ($14,620), less the unpaid balance of the mortgage ($50,000) producing a net value of $107,380.

Husband takes the position that the house should be valued at $150,000, less 8½% as cost of sale ($12,750), less the unpaid mortgage balance ($53,363), producing a net value of $83,887.

Having listened to the testimony of the witnesses I believe that Mr. Witsil's valuation of the real estate is most accurate and I therefore accept his valuation.

Therefore, the net value of the real estate I determine to be $83,887. (Pages 8–9)

*The Facts*

There is little or no dispute over the facts.

The hearing took place on two days, September 10, 1982 and October 21, 1982. The two real estate experts testified on September 10, 1982.

Mr. Hill, wife's appraiser, valued the former marital residence at $172,000. Although the parties are in agreement that Mr. Hill testified that the property could easily sell for over $200,000 I find no reference in the transcript to a possible sale for $200,000. The testimony of Mr. Hill was that he would "list" the property for sale at $195,000. The following excerpts from Mr. Hill's testimony are pertinent:

Mr. Berkowitz: And you have given us the differences between the two houses. By the way I haven't gotten from you what you feel that the Bachtle house is worth.

Mr. Hill: O.K. $172,000.

Mr. Berkowitz: Today?

Mr. Hill: Yes.

Mr. Berkowitz: Is that what you would list it for?

Mr. Hill: No.

Mr. Berkowitz: Why not?

Mr. Hill: The difference between putting a property on the market for sale and sitting here and saying somebody will buy it I could bring a contract in, I feel, putting the property on the market within 30 to 60 days. The property, the conditions of the market are such that there are a lot of people that could afford the house and would move on a house like this but are not looking. (T–8).

Mr. Witsil, husband's appraiser, valued the property at $150,000. His valuation was the same on July 17 and September 10, 1982. The following excerpts from Mr. Witsil's testimony are relevant:

Mr. Berkowitz: So if there is a difference between you and Mr. Hill of some $20,000, $22,000, the way to find out what that house is worth is to list it at Mr. Hill's price and see how fast it sells. Is that correct? If it's really only worth $150,000 it won't sell, will it.

Mr. Witsil: Well, I can't say that's not true. You've got to be very careful. I think if you listed it at $172,000 you are putting it out of the market and you could say you could sit there like Willard Street sat there for 100 and some days, 132 days. He put a price of $172,000 and my opinion is it's going to sit there for quite a long time until you either, luck sells it or you adjust it to the market. (T–31).

\*　　\*　　\*　　\*　　\*　　\*

Mr. Witsil: The best way to test the market is to expose it to the market. To find the sale that meets the market conditions. (T–32).

In summary, two real estate appraisers testified that the former marital residence was worth $150,000 and $172,000, respectively. Eight or nine months later the property sold for $218,000. Approximately 10 months later wife moved to reopen the proceedings to reflect the "true value" of the former marital residence to be $218,000. The difference between the two real estate appraisers is $22,000. Mr. Witsil's appraisal is 69% of the sale value. Mr. Hill's appraisal is 79% of the sale value.

The Law

■ Wife's motion does not specify its procedural basis. The only provision of *Fam.*

*Ct.R.* 280(b) that could possibly apply to this situation would be a motion premised upon "newly discovered evidence." But the evidence that the court is asked to consider does not constitute "newly discovered evidence" because it was not in being at the time of trial and then discovered with due diligence after the trial. In order for evidence to be newly discovered it must have been in existence at the time of the trial but not discovered until after the trial was concluded. Facts coming into existence after trial do not constitute newly discovered evidence. *See, Rohner v. Niemann,* Del. Supr., 380 A.2d 549, 554 (1977).

See also, *Brown v. Pennsylvania Railroad,* 282 F.2d 522 (3rd. Cir.1960), *cert. denied,* 365 U.S. 818 (1961); *Hughes v. Sanders,* 287 F.Supp. 332 (D.Okla.1968); *Schuyler v. United Airlines,* 94 F.Supp. 472, 477 (M.D. Pa.1950) *aff'd* 188 F.2d 968 (3rd. Cir.1951); *Prostrollo v. University of South Dakota,* 63 F.R.D. 9 (D.S.D.1974).

If relief is to be available to wife it must be secured through 13 *Del.C.* § 1519(a)(3) reading as follows:

(3) Property disposition, only upon a showing of circumstances that would justify the opening or vacation of a judgment under the Rules of the Superior Court of this State;

The statute leads us inescapably to *Super. Ct.R.* 60(b).

■ There are two possible bases for relief under Rule 60(b). One possible basis for relief would be "(2) newly discovered evidence which by due diligence could not have been discovered in time for a new trial under Rule 59(b);" and "(6) any other reason justifying relief from the operation of the judgment." The evidence that wife would like the court to consider is not "newly discovered" and wife does not really urge that it is. Therefore, no further consideration will be given to that possible basis for relief. I will now turn to the language "any other reason justifying relief" to see whether relief might be afforded to wife under this language. This language presents an independent ground for relief

with a standard to be applied different from the standards applicable to other subdivisions of Rule 60(b). The standard or test for granting relief under Rule 60(b) is a showing of an extraordinary situation or circumstances. *Jewell v. Division of Social Services,* Del.Supr., 401 A.2d 88 (1979); and *Schremp v. Marvel,* Del.Supr., 405 A.2d 119 (1979). Do the facts before me demonstrate "extraordinary circumstances?" That question will now be determined.

■ It is important to bear in mind that contrary to wife's argument the best evidence of value on the day of the hearing was the opinions given by the two real estate appraisers. There was no way to tell on September 10, 1982, the day both of these men testified, what a ready, willing and able purchaser would actually pay, and what a ready, willing and able seller would actually accept, for the property in question. That evidence did not become available until 8 or 9 months later. It is also important to bear in mind that a sale price of $218,000 on a given day is not necessarily indicative of the fair market value of the property on any day 8 or 9 months earlier. What is clear is that real estate values are constantly changing and are directly affected by the law of supply and demand. Interest rates have also declined from a high of about 17% down to around 13%. It is also possible that this property sold at a very high price because it happened to meet the needs of a very specific purchaser. In short, without receiving further evidence which would require a further hearing, I cannot draw any firm conclusion from the price paid for this property as to whether the value of the property on September 10, 1982, was substantially greater than the value placed upon it by two real estate appraisers. As previously noted, the appraisers were $22,000 apart, not a shocking differential. One cannot help but wonder whether wife might not complain of the testimony of her own expert witness who valued the property at 79% of the value established by the later sale price.

In deciding whether to open the judgment I do not ignore the surprise and dismay of wife who sees a property valued at $150,000 on September 10, 1982, sold for $218,000 8 or 9 months later. If the earlier expert opinion were now abandoned and $218,000 were accepted as a proper evaluation, there would be a 48% increase in the marital estate. Then that value of the property would increase from $83,887 to $147,470. Thus, there would be a substantial monetary increase in the marital estate allocated to wife.

But there is danger in affording relief to wife under these circumstances. If this judgment were opened, when might parties to marital litigation expect that a judgment on ancillary matters would become final and conclusive? If I abandon the clear guide post of date of entry of a final judgment, where do I draw the outside line for granting relief or do I draw a line at all? If I reopened the judgment, here do I have to consider new evidence as to the value of the property and, perhaps, new evidence as to the value of other marital property making another hearing necessary? Might I not have to reconsider the whole scheme of distribution between the parties? I must not create a precedent that would enable dissatisfied litigants to relitigate property valuations alleging that such valuations were either too high or too low. Fortunately, *Wife F. v. Husband F.*, Del.Supr., 358 A.2d 714 (1976) offers guidance to the court. I quote the following paragraph from that opinion:

Wife applied to reopen the hearing so that she could submit evidence as to the sale but the Court refused to hear it. Given the equitable nature of the proceeding, the time at which the application was made (before final order), the total amount of property involved in the proceeding, and the substantial difference between the asset and the sale value of the business, we conclude that the application should have been granted. We emphasize that not every post-hearing change in asset value requires reexamination, or an evidentiary hearing, but the difference here was so substantial that the Court, which was still attempting to finally settle the property issues, should have determined to what extent, if any, the sale price required a change in its award. Failure to do so was, in our view, an abuse of discretion.

Id. at 716.

In *Wife F. v. Husband F., supra,* the court valued the corporate assets at $26,722. Then, before a final order was entered, the husband made an agreement to sell the business for $110,000, 4 times the value fixed upon the assets by the court. That case and this case are marked by great disparity between the judicial valuation and the sale price although the disparity is not nearly so great in the case at bar. Importantly, no final order had been entered in *Wife F. v. Husband F., supra,* before the disparity was discovered.

The Supreme Court stated that it is "... not every post-hearing change in asset value requires reexamination, or an evidentiary hearing ..." The court relied on two factors in overruling the trial judge: first, there was tremendous disparity between the judicial valuation and the sale price; and, secondly, no final order had been entered and the court was still trying to settle finally the property matters. *Wife F. v. Husband F., supra,* provides very clear guideposts for this court to follow.

Husband cites for the court's consideration *Reville v. Reville,* Me.Supr., 370 A.2d 249, 253 (1977):

Reasons of public policy make it desirable that judgment affecting the marital status, whether nullity, dissolution or separate, have a high degree of stability. Such judgment affects so many collateral rights and interests of third persons that uncertainty and fluctuations respecting them would be greatly detrimental to the public interest.

The Supreme Court in *Walter W.B. v. Elizabeth P.B.,* Del.Supr., 462 A.2d 414 (1983) held that this court must identify marital property as of the date of the di-

vorce but that equitable factors may exist which dictate the use of a valuation date after the divorce date.

It is my holding that the court will not consider newly available evidence as to value after the entry of final judgment absent a finding of *extraordinary* circumstances. After carefully examining and considering the evidence adduced on the motion, it is my conclusion that the circumstances here are not extraordinary and that the apparent disparity in valuations might be explained for a number of reasons and, in fact, do not constitute a *real* disparity.

Certainly, the difference in the case at bar nowhere approaches the difference in value considered by the Supreme Court in *Wife F. v. Husband F., supra.* I conclude, therefore, in my discretion, that wife's motion must be denied.

SO ORDERED.