HARRY HOENSTINE, PLAINTIFF AND RESPONDENT, *v.* STANFORD ROSE, DEFENDANT AND APPELLANT.

No. 9474.
Submitted May 8, 1957. Decided June 11, 1957.
312 Pac. (2d) 514.

558

Mr. A. A. Merrill, Idaho Falls, Idaho, Mr. J. F. Emigh, Butte, for appellant.

Messrs. Doepker & Burgess, Butte, for respondent.

Mr. Merrill and Mr. Robert E. Doepker argued orally.

MR. JUSTICE ADAIR:

Action in tort for damages. On November 10, 1952, by complaint filed in the district court for Beaverhead County, Montana, Harry Hoenstine, as plaintiff, commenced this suit against the defendant, Standford Rose, to recover for damage done to plaintiff's automobile. From a judgment for the plaintiff entered on a jury's verdict, the defendant, Stanford Rose, has appealed specifying as error the trial court's refusal: (1) To grant defendant's motion for non-suit, (2) to grant his motion for a directed verdict, and (3) to enter judgment in his favor.

Plaintiff's complaint charged: That on April 13, 1952, the defendant, Stanford Rose, so negligently and recklessly operated and drove his Kaiser sedan automobile on U. S. Highway No. 19 at a point thereon approximately one mile south of the place known as Snowline in Beaverhead County, Montana, that upon overtaking and attempting to pass plaintiff's 1951 Chevrolet sedan automobile, and while defendant's Kaiser automobile was traveling at the speed of approximately 80 miles per hour, dependent ran and drove his car into and upon the rear of plaintiff's Chevrolet automobile, and that as the direct and proximate result of defendant's negligence and the resulting collosion plaintiff's automobile "was damaged and wrecked in that the rear and sheet metal frame, the rear quarter panel

and fender assembly, the back lower panel, the quarter panel extension, the back splash pan, the outer left bumper iron and inner left bumper iron, the center face bar and left outer face bar, the right and left bumper guards, the deck lid assembly, the left tail light, the right rock shield and shield extension, the right rear fender, the left rear of turret top, the trunk lining, the floor of trunk, the front seat track, the upholstery on rear of front back rest, the steering wheel, the gas tank, and the car finish and frame and body were torn, destroyed, damaged and wrecked; that the reasonable cost of repairs to said 1951 Chevrolet sedan, arising out of or resulting from the collision and the negligence, carelessness and recklessness of the defendants as aforesaid amounted to the sum of $507.45.''

The complaint further alleged that as a result of defendant's said negligence plaintiff's automobile was depreciated in value in the reasonable amount of $300; that plaintiff was deprived of the use of his car for four days after the collision; and that the reasonable value of such use was the sum of $5 per day.

Defendant's answer is in two parts. In the first part defendant admitted that, at all the times mentioned in the complaint, plaintiff was the owner and entitled to the use of said 1951 Chevrolet sedan automobile and admitted that at the time of the collision defendant owned and was driving the said Kaiser sedan automobile but denied all other allegations of the complaint.

In the second part of his pleading and for a further answer and as an affirmative defense, the defendant alleged that at the time and place stated in plaintiff's complaint the defendant, Stanford Rose, was driving on and along said public highway in a careful and cautious manner; that three cars were then and there proceeding northerly and in a row on such highway; that plaintiff's car was in front and defendant's car was next with the third car following that of the defendant; that such third car pulled out around and passed defendant's car and then passed plaintiff's car; that defendant then attempted to pass plaintiff's car at which time defendant blinked his lights,

honked his horn and attempted to pull out and around plaintiff's car; that there was a distance of five feet between defendant's Kaiser and plaintiff's Chevrolet; that as defendant's Kaiser went to pass plaintiff's Chevrolet, the latter pulled immediately in front of defendant's car and on defendant's side of the highway thereby causing the collision; that the only damage thereby done to plaintiff's car was a bent fender; that defendant's car was also damaged by the fenders being bent and broken; that the driver of plaintiff's car was negligent and guilty of contributory negligence in: (a) Attempting to stop defendant from passing him; (b) pulling across the center line of the highway into the path of the defendant; (c) failing to keep to his own side of the road after defendant had given him the proper signals that he intended to pass; and (d) in recklessly and negligently driving plaintiff's automobile on said highway in the manner aforesaid.

Plaintiff's reply placed in issue the allegations of defendant's affirmative defense and the charges of negligence and contributory negligence so made against the driver of plaintiff's automobile.

Plaintiff's proof at the trial was supplied by the testimony of six witnesses. The evidence was to the following effect. At about three thirty o'clock on the morning of April 13, 1952, plaintiff's 1951 Chevrolet sedan automobile was being driven northerly on U. S. Highway No. 91 at a speed of between forty and fifty miles an hour. Plaintiff's car was behind and following an older automobile traveling in the same direction. Both automobiles were then passed by another northbound automobile going very fast. Thereupon and when plaintiff's automobile had proceeded but a short distance it was hit in the rear by a Kaiser automobile then owned and driven by the defendant, Stanford Rose, which had overtaken and was attempting to pass plaintiff's automobile. There are a number of hills in this location and the highway "is very rolly, hilly-like." The accident occurred right near the top of a small knoll or hill.

When asked to describe the highway at the place where the collision occurred plaintiff's wife, who was riding in plaintiff's car at the time of the collision, testified: "A. I think it was just over the brink of a little knoll, two or three little dips like. Q. Hills? A. It was just over the last one. Q. I see. A. Just as we was going over." Another passenger riding in the back seat of plaintiff's automobile testified that immediately prior to the collision he observed two northbound automobiles rapidly approaching plaintiff's automobile from the rear. He testified: "These ones behind us were coming on us pretty fast and then we hit, or they hit us. Well, when the first one went by it was going pretty fast, then the second one, that was Rose's going about 75, 80, miles an hour * * * it hit us * * * when it hit us we went down the road about a hundred feet from one side to the other, finally got it stopped on the right side of the road * * * there was a bunch of hills,—the one we was on there was two yellow lines going down the side of the hill * * * there was three or four hills before that, then there was this one hill we was on, we was going down the other side of it." The witness then was asked and he answered: "Q. On that point of highway could one starting over those hills, could one see the cars ahead at all times. A. No."

Following the collision, plaintiff's Chevrolet sedan was taken to the Ben Redd Chevrolet Company's shop in Dillon, Montana, where it was gone over and inspected by the witness, Jess J. Warrick, an expert body and fender mechanic of some eight to ten years experience. Warrick testified that by reason of his long experience in his trade and occupation, he was qualified and able to estimate the value of plaintiff's automobile with which he was familiar both before and after the collision. When asked as to its condition and value immediately before the collision Warrick testified: "It was a pretty fair used car, I mean a good car," and he estimated its value immediately *before* the collision at "around $1,800." Immediately after the collision the witness prepared a detailed, written, itemized estimate of

the costs of repairing the damaged automobile which estimate, comprising three sheets of paper, was admitted in evidence as plaintiff's Exhibit No. 1. It lists and itemizes repairs and parts to cost $216.34 and labor of installing same to cost $291.20 making a total of $507.54, which sum Warrick testified "is what we charged to the particular job of damage." He also testified: "I think we repaired it almost as soon as it got in, as soon as we got parts. * * * The estimate is made and we charge the customers according to the total on your estimate regardless of whether we lose or gain; that is more or less a contract." Warrick further testified that *after* plaintiff's 1951 Chevrolet was repaired his estimate of its trade-in value was about $1,600.

The plaintiff testified that he was without a car for some four days after the collision, at the end of which period he traded in his damaged 1951 Chevrolet stating that he got rid of the car because of the accident.

At the close of plaintiff's case in chief, the defendant interposed a motion for a nonsuit contending that the plaintiff had wholly failed to prove the allegations of his complaint in various particulars, urging that according to plaintiff's Exhibit No. 1, supra, "the plaintiff did not pay for the repairs but on the contrary the repairs and the exhibit so show that it was paid in full *by* Ben Redd Chevrolet Company, John C. Tolson, Assistant Manager." Defendant refers to a notation or endorsement appearing near the bottom of Sheet No. 3 of plaintiff's Exhibit No. 1 reading: "Paid in full Ben Redd Chev. Co. John C. Tolson Ass't Mgr." Such endorsement appears to be an acknowledgement or receipt executed by the assistant manager of the automobile company which had given its estimate of the cost of repairing the wrecked car evidencing the fact that the estimated amount of $507.54 had been paid in full *to* the estimating automobile company through its assistant manager, and not that the estimated repairs had been paid *by* the estimating company *to* itself. Defendant further contended that plaintiff's evidence showed "that he sold his automobile, re-

pairs of which he is now suing, four days after the wreck that he had no further interest therein" and that when plaintiff commenced this suit he was not then the real party in interest. Such contention is wholly without merit.

It is not a condition precedent to recovery for items of damage necessary to put plaintiff's wrecked vehicle in the condition it was before the accident that plaintiff should have first incurred an indebtedness therefor or that he should have actually expended or paid the sum claimed in replacing or repairing the damaged parts. Chambers v. Cunningham, 153 Okl. 129, 5 Pac. (2d) 378, 78 A.L.R. 905; Kincaid v. Dunn, 26 Cal. App. 686, 148 Pac. 235, 236; Menefee v. Raisch Improvement Co., 78 Cal. App. 785, 248 Pac. 1031, 1032; J. J. Clarke Co. v. Toye Bros. Yellow Cab Co., La. App. 1945, 22 So. (2d) 298, 300; Newman v. Brown, 228 S.C. 472, 90 S.E. (2d) 649, 653.

In Wolf v. Altoona & Logan Valley Elect. Ry. Co., 92 Pa. Super. 259, the court said: "The plaintiff was not bound to repair his car to entitle him to compensation for the injury sustained. He could say I do not consider the car in its present condition worth repairing and could attempt to show that the injury was beyond profitable repair  *  *  *"

R.C.M. 1947, section 17-201, provides: "Every person who suffers *detriment* from the unlawful act or omission of another may recover from the person in fault a *compensation* therefor in money, which is called damages." Emphasis supplied.

R.C.M. 1947, section 17-202, provides: "*Detriment* is a loss or harm suffered in person or *property.*" Emphasis supplied.

R.C.M. 1947, section 17-401, provides: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is *the amount which will compensate for all the detriment* proximately caused thereby, whether it could have been anticipated or not." Emphasis supplied. See Missouri Pac. Ry. Co. v. Qualls, 120 Okl. 49, 250 Pac. 774, wherein the supreme court of Oklahoma construed and applied section 5996, C.O.S. 1921, 23 O.S. 1951 section 61, which is substantially the same as

R.C.M. 1947, section 17-401, supra. Compare Wilk v. Mt. Oliver Borough, 152 Pa. Super. 539, at pages 542, 543, 33 A. (2d) 73.

In Chambers v. Cunningham, supra [153 Okl. 129, 5 Pac. (2d) 379], the supreme court of Oklahoma said:

"Plaintiff introduced evidence which established that it would cost approximately $1,400 to have repaired the truck and put in the same condition it was in prior to the collision. He did not, however, repair it, but sold it in its damaged condition to General Motors Corporation. The court instructed the jury that plaintiff's measure of damages, in the event the truck could have been repaired, was what it would have cost to repair it and the value of its use necessarily lost pending repair.

"Defendant contends that this is not the proper measure of damages, for the reason that plaintiff did not repair the truck and because he sold it to the motor company in its damaged condition. It is his contention that plaintiff's proper measure of damages in these circumstances is the difference between the fair market value of the truck before it was damaged and its value thereafter, and that there is no evidence which establishes such damages. The general rule relative to the measure of damage for injury to personal property is as stated by the trial court in its instruction to the jury. In the case of Marland Refining Co. v. Duffy, 94 Okl. 16, 220 Pac. 846, 851, 35 A.L.R. 52, this court said: 'When an automobile has been damaged by the negligence of another and can be repaired, the proper measure of damages is the cost of the repairs and the value of the loss of the use of it while it is being repaired. If it cannot be repaired then the measure of damages is the difference between the market value of the automobile before it was damaged and the value of the wreckage.'

"The evidence discloses that the truck was not damaged beyond repair, and the mere fact that plaintiff did not repair it does not preclude him from measuring his damages under this rule. * * *

"Defendant also contends that plaintiff cannot recover because the evidence establishes that he is not the real party in

interest. This contention is based on the theory that he sold the truck in its damaged condition and it was repaired by the purchaser thereof, and that plaintiff's purchaser is, therefore, the party entitled to maintain the action. This contention cannot be sustained. Plaintiff was the owner of the truck at the time it was damaged. He is the party who was injured and is the proper party plaintiff to maintain the action."

In Newman v. Brown, 228 S.C. 472, 90 S.E. (2d) 649, at page 653, it is said: "There is no requirement that one whose automobile is damaged by the negligence of another must have it repaired in order to entitle him to recover his damages. [Citing authorities.] Of course, a competent estimate of the cost of repairs is relevant upon the issue of the amount of damages; and estimates were properly admitted in evidence in this case because they were relevant to the issue, as were the estimates of the salvage value of the wreckage and the period of deprivation of the use of the automobile for a reasonable time within which the repairs could have been made. The last mentioned item is additional to the repairs could have been made. The last mentioned item is additional to the basic measure of the damages, which is that they are the amount of the difference between the reasonable market value of the automobile immediately before the injury and its reasonable market value immediately after the injury. Coleman v. Levkoff, 128 S.C. 487, 122 S.E. 875. * * *

"If plaintiff had had the automobile repaired, it would not have diminished her damages as that issue was submitted to the jury (and submitted under proper instructions, as we have seen) which in this case was the difference in market value 'before and after,' plus the value of the loss of use of the automobile during the period reasonably necessary for repairs."

In his motion for nonsuit defendant asserted that plaintiff wholly failed to prove that he was damaged in the sum of $507.45 or that plaintiff's automobile was depreciated in the sum of $300 or any other amount. Regardless of whether plaintiff's automobile was depreciated in the sum of $300 as pleaded

in the complaint or in the sum of $200 after first making the necessary repairs costing $507.45 as was testified to by the witness Warrick, the undisputed evidence is that plaintiff suffered detriment and loss in his property as a direct and proximate result of the collision for which loss plaintiff is entitled to be compensated. We find no merit in defendant's motion for nonsuit and such motion was properly denied.

At the conclusion of all the evidence in the case and after both parties had rested the defendant interposed the following motion: "I now move the court to instruct the jury to bring in a verdict for the defendant upon all of the grounds and for all of the reasons that I made in my motion for a nonsuit." This motion was properly denied.

The jury's verdict so far as here pertinent, reads: "We, the jury in the above-entitled cause find our verdict in favor of the plaintiff, Harry Hoenstine, and against the defendant, Stanford Rose, and assess plaintiff's damages in the sum of Two Hundred Ninety Six and 88/100 ($296.88) Dollars."

Where as here trial by jury had been had "judgment must be entered by *the clerk*, in conformity to the verdict." R.C.M. 1947, section 93-5701. The judgment entered in this action conforms to the verdict and fully meets the requirement of section 93-5701, supra. While plaintiff's undisputed evidence shows damage done to his automobile in at least the sum of $707.45, yet he made no cross-appeal nor did he ask the court for any relief other than that the judgment be affirmed. Accordingly the judgment entered on the verdict in the district court is affirmed and remittitur will issue forthwith.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES CASTLES, ANGSTMAN and BOTTOMLY, concur.