In the Matter of Jeanette BRAUN, a Minor Under the Age of Eighteen Years.

STATE of North Dakota, Plaintiff and Respondent,

v.

Jeanette BRAUN, Defendant and Appellant.

Cr. 350.

Supreme Court of North Dakota.

Oct. 20, 1966.

Lanier, Knox & Shermoen, Fargo, for appellant.

Harold O. Bullis, State's Atty., Richland County, Wahpeton, for respondent.

KNUDSON, Justice.

The appellant Jeanette Braun was committed by the Juvenile Court of Richland County to the State Industrial School by order dated April 18, 1966, having been adjudged a delinquent minor. On July 26, 1966, she made a motion before the district court for a new trial under Rule 59(c) (2), North Dakota Rules of Civil Procedure, and a further motion to the court for relief from the order of April 18, 1966, committing her to the State Industrial School under Rule 60(b) (2) and (6), supra. It was stipulated by the parties that the motion be submitted to the court upon the affidavits attached to and a part of the motion and on all the files and records. On August 29, 1966, the court issued its order denying the motion for a new trial or rehearing. Jeanette appealed on September 13, 1966, to the supreme court from the judgment dated April 18, 1966, committing her to the State Industrial School at Mandan, and the whole thereof, and from the order dated August 29, 1966, denying the petition and motion of Jeanette for a rehearing in said case and from the whole thereof, and demanded a trial de novo in the supreme court.

Jeanette sets forth the following specifications of error:

I

The District Court sitting as Juvenile Court erred under all the circumstances involved in finding that appellant was a juvenile delinquent.

II

That if said Court could properly find that appellant was a juvenile delinquent, that said Court erred, in her condition of pregnancy, in committing her to the State Industrial School at Mandan, North Dakota.

### III

That the Court erred in denying appellant a new trial or a new hearing upon all of the affidavits submitted at that time.

### IV

That the Court specifically erred at the time of denying said motion and petition for a new trial and new hearing in holding that "The basis urged for the new trial or rehearing is that the Court did not permit Ronald C. Kelly, the purported father of the unborn child of Jeanette Braun, to testify at the hearing * * *."

### V

That in effect, the Court has refused to allow an unborn child to have a legal name and father at the time of its birth.

The State contends that the motion for a new trial or a rehearing was not made within sixty days from the date of the rendition of the decision of the court, and was not made upon the basis of newly discovered evidence to justify relief under Rule 60(b) (2), supra, which provides:

[N]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b).

Rule 59(b), supra, provides that a former verdict or other decision may be vacated and a new trial granted for causes materially affecting the substantial rights of a party, including:

4. Newly discovered evidence material to the party making the application, which he could not with reasonable diligence have discovered and produced at the trial.

Rule 59(c), supra, provides the time within which a motion for new trial must be made after the return of the verdict or rendition of the decision:

1. Upon the ground of newly discovered evidence, within six months; and

2. Upon any other ground, within sixty days, unless the court, for good cause shown, shall extend the time.

The state further contends that the appeal to the supreme court was not made within sixty days from the order of the court finding Jeanette to be a delinquent child and committing her to the State Industrial School.

The motion of Jeanette for a new trial in the district court was made under Rule 59(c) (2), supra, and for relief from the judgment of April 18, 1966, committing her to the State Industrial School, under Rule 60(b) (2) and (6), supra.

It is apparent from the facts in this case that there is no showing of newly discovered evidence to support the motion under Rule 60(b) (2), supra, and therefore we must consider whether the motion for relief from the judgment of April 18, 1966, comes within Rule 60(b) (6), which provides:

(b) On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order in any action or proceeding for the following reeasons: * * * or (6) any other reason justifying relief from the operation of the judgment. * * *

■ This broad language gives the courts ample power to vacate judgments whenever such action is appropriate to accomplish justice. Of course, this power is not provided in order to relieve a party from free, calculated and deliberate choices he has made. The party remains under a duty to take legal steps to protect his interests. But if it is unjust that a judgment be enforced, Rule 60(b) (6), supra, provides an avenue

for escape from the judgment, unhampered by detailed restrictions, and the courts have used this clause in a wide variety of situations. Barron & Holtzoff, Federal Practice and Procedure, Rules Edition, Chapter 11, § 1329. It is apparent that Jeanette's motion for a new trial, made July 26, 1966, was made more than sixty days after the rendition of the judgment and order dated April 18, 1966, required by Rule 59(c) (2), supra, and the appeal to this court dated September 13, 1966, is more than six months from the judgment and decree of March 7, 1966, determining that Jeanette was a delinquent child within the meaning of the statutes. The notice of appeal of Jeanette recites that appeal as being from the judgment of April 18, 1966, committing her to the State Industrial School. However, this latter judgment or order, although it reiterated the determination that she was a delinquent child, in fact, was an order committing her to the State Industrial School.

█ Regardless of the question whether the motions for new trial and the notice of appeal to this court were or were not timely made, we are of the opinion that Rule 60 (b) (6), supra, should be invoked in this case in the interests of justice and for the best interests of the minor and the State of North Dakota.

█ There is no doubt that the defendant Jeanette was a delinquent child within the meaning of the statutes, and the court was correct in so finding her and in assuming jurisdiction over her. However, the question arises: Was the order committing her to the State Industrial School for the best interests of Jeanette Braun and of the State of North Dakota?

Jeanette had been living at the home of her parents at Wahpeton, North Dakota, and had been attending high school. On or about February 4, 1966, Jeanette, with four other girls, in her bedroom, drank two six-packs of beer, of which Jeanette and her friend drank all but two cans. The next morning Jeanette and her friend, who

stayed overnight, were late for school. Jeanette attended her first class, skipped her second class, and during the third class had some difficulty with her teacher because of giggling and laughing, and otherwise cutting up. The incident was reported by the school authorities to the Juvenile Commissioner who filed a petition with the district court praying the court to make provision for such child as the court may deem proper. A hearing was held on the petition on February 23, 1966, and on March 7 the court issued its order determining Jeanette to be a delinquent child within the meaning of the statutes, further ordering that the child should remain in the custody of her parents and placed on probation for a period of six months with the Juvenile Commissioner. It was further ordered that as a condition of probation that she be placed in a school to finish her high school. Jeanette at this time was sixteen years of age and a Junior in the Wahpeton high school. Jeanette had dropped out of school in her sophomore year to have an illegitimate child out of wedlock. She finished her sophomore year by correspondence.

The parents were unable to place Jeanette in any high school because the Wahpeton high school and the Hankinson Academy refused to accept Jeanette. Jeanette and her parents were brought before the court again on April 5, 1966, because of their failure to place Jeanette in school. It was brought out at this hearing that Jeanette was pregnant and planned on being married. The court ordered a clinical examination to determine whether or not she was pregnant. Thereafter, on the 18th day of April, 1966, the court ordered Jeanette committed to the State Industrial School at Mandan.

The Industrial School sent Jeanette to the Florence Crittenton Home at Fargo as the Industrial School had no facilities for the care of pregnant girls. While she was at the Florence Crittenton Home she and her father and Ronald Kelly, the father of

her unborn child, went to Sisseton, South Dakota, where she and Mr. Kelly were married. After her marriage she returned to her home as the Florence Crittenton Home would not keep a married woman. Shortly thereafter the marriage was annulled as Jeanette had not obtained the order of the juvenile court or of the superintendent of the State Industrial School granting Jeanette permission to marry, as required by § 14–10–07, N.D.C.C. Thereafter, on July 25, 1966, Jeanette filed the motion for a new trial or for a rehearing before the juvenile commissioner and the district court, which motion was denied. The affidavit of Ronald Kelly attached to the motion states that he is the father of the unborn child; that he is 22 years of age; that on May 27, 1966, he graduated from the Wahpeton School of Science; that he and Jeanette are very much in love and are desirous of becoming married; that his father has purchased a home situated on two acres of land in Renville County next to the farming operations of affiant and his father for the purpose of providing a good and suitable home for him and Jeanette and their children; that affiant is engaged in farming with his father and his brother, the farm consisting of seventeen and a half quarters of land; that at the hearing on April 5 he appeared at the courthouse to tell the court that he and Jeanette wanted to get married but was informed that he could not attend the hearing and he was not able to testify; that he has been charged with statutory rape and the fact that the said statutory rape charge is still pending has nothing to do with this affiant's desire to enter into said marriage, and that the desire to marry is because of the love of the parties for each other and the desire to give a name to their unborn child and to live together as man and wife.

The affidavit of Jeanette Braun states that she is very much in love with Ronald Kelly and that she desires to be legally married to him and to give her unborn child a name and a permanent family home.

The affidavit of Mathew Braun and Ramona Braun, parents of Jeanette Braun, states that they are desirous that their daughter Jeanette be married to Ronald Kelly and they are confident that he will prove to be a good husband and father, and that the unborn child of their daughter be born in wedlock.

With the foregoing statement of facts in mind we will consider the question: Was the order of commitment to the State Industrial School for the best interests of Jeanette Braun and the State of North Dakota?

■■ To begin our discussion we would like to quote from the opinion of the late Honorable Thomas Burke in the case of State v. Myers, 74 N.D. 297, 22 N.W.2d 199, at page 201:

We realize that proper disposition of cases of juvenile delinquency requires a delicate balancing of mixed considerations and that even the most careful weighing of pertinent factors can only result in conclusions that are speculative to the extent that they attempt to predict the course of future events. Confidence that a correct conclusion has been reached must of necessity rest upon hope founded in experience, rather than on certainty. We think therefore that the problem should be approached in a spirit of optimism and that drastic remedies should not be invoked where we can have reasonable hope that lesser ones will have an equal if not a complete success.

What then are the factors to be considered and what relative weight is to be given to each? To what extent is the welfare of an individual delinquent to be counterbalanced by the good of the state? In one sense, a decision, which will help quiet public indignation over a scandalous condition which has arisen in a community, or which, because of its severity, will act as a forbidding example

to other youngsters, may be said to be for the good of the state. But we do not think that, as used in the juvenile act, the phrase can be given such a broad interpretation. Considerations of expediency, the satisfaction of public indignation, or example are contrary to the whole spirit of the juvenile act. They are dependent on publicity to be effective for any purpose and all proceedings in juvenile court are declared by statute to be "confidential." Section 27–1606, R.C. 1943. We therefore hold that the good of the State requires a child to be removed from a community only when his delinquency is such that he has become a danger to society either because of his own conduct or his influence upon others.

In the case under consideration we have a girl, now 17 years of age at the time of the hearing, who has given birth to one illegitimate child and is about to give birth to another within the next month or so, unless she is permitted to marry the father of her unborn child. There are instances of other indiscretions on the part of Jeanette over the past few years of drinking beer on a few occasions. Her school work has been haphazard and her grades vary from incompletes to A. The record does not disclose any other indiscretions than her sexual indiscretions and the beer drinking. It appears to us that, though this situation is serious, there was another alternative than that of committing her to the State Industrial School, and that is to have permitted these young people to marry. Certainly the State Industrial School is not an institution for pregnant girls as they have no facilities to care for them. It appears that Ronald Kelly comes from a substantial farm family, well able to provide a good home for himself and his wife and child.

We therefore determine it is not for the best interests of the minor to continue in effect the commitment to the State Industrial School. We think that it is for the best interests of the minor and the State of North Dakota that these two young people be permitted to marry, and we therefore hold that the court abused its discretion in failing to relieve the minor of her commitment to the State Industrial School. The court had another alternative in permitting her to be married to the father of her unborn child. It appears that the juvenile court did not seriously consider this alternative. Mr. Kelly apparently is well able to care for a wife and children and these young people should be given the opportunity to show that they can accommodate themselves to a normal life.

The order entitled Order Denying Motion for New Trial or Rehearing is reversed and remanded to the district court sitting as a juvenile court with direction to enter an order pursuant to Rule 60(b), supra, relieving Jeanette Braun from the order committing Jeanette Braun to the State Industrial School dated April 18, 1966, and with further direction to enter an order pursuant to § 14–10–07, N.D.C.C., granting permission to Jeanette Braun to marry Ronald C. Kelly.

We wish to point out, however, that our holding in this case is based only on the special facts of this case and is not to be considered as a proper or recommended solution in all cases involving premarital indiscretions.

TEIGEN, C. J., and ERICKSTAD, STRUTZ and MURRAY, JJ., concur.