**CHEMICAL LEAMAN TANK LINES, INC.,**
**Appellant,**

v.

**TRINITY INDUSTRIES, INC., Appellee.**

No. 17821.

Court of Civil Appeals of Texas,
Dallas.

March 2, 1972.

Rehearing Denied March 30, 1972.

Lloyd Scurlock, Rawlings, Sayers & Scurlock, Fort Worth, for appellant.

John L. Estes, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellee.

BATEMAN, Justice.

The appellee Trinity Industries, Inc. sued appellant Chemical Leaman Tank Lines, Inc. to recover the agreed purchase price of a tank-trailer, which was manufactured for appellant under a written contract, but was rejected by appellant. The trial court, sitting without a jury, rendered judgment for appellee. We affirm.

The trial court filed findings of fact, including the following: Appellant placed a written order with appellee for the fabrication of a tank-trailer to haul HCL[1] and agreed to pay $33,428 therefor, no portion of which has ever been paid; that written plans and specifications for the tank-trailer were approved by appellant; but these contained no provisions relating to the interior finish of the tank-trailer, which was fabricated and delivered in conformity to the plans and specifications and

1. Hydrogen chloride.

the applicable ASME[2] Code provisions; appellant had ample opportunity to inspect and did inspect the tank-trailer at a time when the alleged defects complained of could have been discovered; there was no faulty material or workmanship in the tank-trailer, it being fit and suitable for the purpose for which it was intended to be used, which was the transportation of HCL; at the time of fabrication or delivery of the tank-trailer appellee did not know that its interior was to receive periodic inspection, or that water was used to make the interior safe for inspection, or that a rough interior finish caused the collection of water, or that the reintroduction of HCL into the tank-trailer would cause corrosion if water was present; that appellant did not intend to use any means of cleaning the tank-trailer other than water, and did not seek an alternative means of cleaning such interior; and that the value of the tank-trailer after it was rejected was $5,600.

Following these findings are the trial court's conclusions of law: that appellee complied with the terms of the contract; that appellee expressly warranted the tank-trailer against faulty material and workmanship; that there was no breach of the express warranty, or of an implied warranty of fitness and suitability; that the tank-trailer conformed to the plans and specifications and applicable ASME Codes; that appellant wrongfully rejected the trailer and "did not rely upon Plaintiff [appellee] that the tank-trailer would be fabricated by Plaintiff for any use other than for the transportation of HCL;" that if appellee did not comply with the contract upon initial delivery of the tank-trailer, subsequent corrections of the alleged defects were sufficient to bring it into compliance with the terms of the contract; and that appellee is entitled to the judgment theretofore rendered.

By its first point of error appellant complains of the exclusion of testimony that appellee did not claim that appellant should have accepted the tank-trailer as it was originally delivered. Michael Allen, who was appellee's trailer sales manager when. the controversy arose, was asked on cross-examination if it wasn't true that appellee never took the position that appellant should have accepted the trailer as it was delivered in late January, 1968. This was objected to on the ground that it called for a legal conclusion; and the objection was sustained. If he had been permitted to do so the witness would have answered "Yes."

▮▮▮ We overrule this point. It appears from the undisputed testimony that appellant purchased the tank-trailer for exclusive use of its customer, Dow Chemical Company, and that when that company informed appellant that the trailer was not suitable for its use appellant rejected it, and that thereafter appellee made an effort to correct the conditions on the interior of the trailer to which objections had been made. When the buyer of a product rejects it, the seller may attempt to make the product acceptable without waiving or prejudicing his right to insist that it complied with the contract in the first place. He is no more prejudiced by the attempt than would a party to any contract who endeavored to avoid litigation by offering to compromise a dispute. The question as to whether appellee ever "took the position" that appellant should have accepted the tank-trailer on its first delivery did not call for testimony as to any fact, but for a legal conclusion. The actual facts were fully developed, including ample support for the trial court's conclusion that the tank-trailer did conform to the contract and the plans and specifications. Moreover, we see nothing in the record to indicate that the exclusion of the evidence "amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment." Rule

2. The American Society of Mechanical Engineers.

434, Vernon's Texas Rules of Civil Procedure.

■ By its second point of error appellant says the trial court erred in admitting evidence of the results of appellee's ultrasonic test over the objection that there was no evidence that either the witness or the operator was competent to operate the machine. When the trailer was first delivered it was rejected because, among other things, the inside of the cylindrical tank, and particularly the "heads" at the ends thereof, contained many pits or indentations and "splatter" consisting of excessive welding material. It was explained that after transportation of HCL the tank would be cleaned with water and that it would be next to impossible to remove all of the water, and that water mixed with HCL would produce hydrochloric acid which would corrode the walls and heads of the tank. Appellee offered to grind these pits and weld "splatter" away, but appellant rejected this offer on the ground that it would reduce the thickness of the tank below $\frac{3}{16}$ths of an inch, the minimum required by law and the contract. However, appellee contended that this was false because the wall of the vessel was actually thicker than the minimum, in support of which position it performed a test with an audiometer, an electrical device which operates on a principle similar to sonar to determine the thickness of metal. Appellee's trailer sales manager, Michael Allen, testified in some detail as to how these tests were conducted. The machine used was operated by one Bedler, a factory representative. Bedler calibrated the machine numerous times before and during the test and demonstrated it to Allen in detail. Allen had a bachelor of science degree in mechanical engineering from the University of Texas at Austin, and testified that the machine used was recognized within the industry as an accurate machine, and that he accepted the machine, the methods, tests and actual experiment as being reliable from a professional point of view of mechanical engineering. Bed-

ler's training was not shown. As Bedler conducted the test he called off the results and Allen wrote them down, and the results were sent to appellant's manager of liquid trailers, Richard L. Plank, in the form of a letter to him, a copy of which was offered in evidence. Appellant objected on the grounds that appellee had failed to lay a proper predicate; the objections were overruled and the copy of the letter admitted.

The appellant argues that this was error because it was not shown that either Allen or Bedler was qualified by training and experience to use the audiometer, directing our attention to the quotation from Wigmore, The Science of Judicial Proof, in Wilson v. State, 168 Tex.Cr.R. 439, 328 S.W.2d 311, 313 (1959), and in Harrington v. State, 385 S.W.2d 411, 423 (Tex.Civ. App., Austin 1964, reversed on other grounds, 407 S.W.2d 467, cert. den. 386 U.S. 944, 87 S.Ct. 977, 17 L.Ed.2d 874). The Court of Civil Appeals in *Harrington* stated:

"The question of whether a proper predicate was laid for the admission of the results for this scientific survey was at least issuable. The ruling of the trial court must be sustained unless there appears to have been an abuse of discretion on his part. We find no such abuse."

See also our opinion in Bryant v. Trinity Universal Insurance Company, 411 S.W.2d 945, 953 (Tex.Civ.App., Dallas 1967, writ ref'd n. r. e.), where we said:

"It is our view that the admissibility of such expert testimony should be left to the sound discretion of the trial judge and that his decision should not be disturbed unless it be shown that he has abused that discretion."

We make the same decision here; we find no such abuse and therefore overrule appellant's second point of error.

■ By its points of error Nos. 3 through 12 appellant in varying phraseology asserts that the trial court erroneously con-

cluded that appellee had not breached its express warranty against faulty material and workmanship, or an implied warranty of fitness and suitability, and that appellant had wrongfully rejected the tank-trailer. It is argued that the evidence "conclusively" shows, and that the overwhelming weight and preponderance of the evidence is, that some of the pits in the heads of the tank reduced its thickness below the minimum required by the contract; also that the evidence "conclusively" shows, and the overwhelming weight and preponderance of the evidence is, that appellee breached an implied warranty of fitness for transportation of anhydrous HCL "by furnishing a vessel containing numerous moisture traps which allow water used in washing to combine with anhydrous HCL to form dilute hydrochloric acid which would damage and corrode the vessel." We have read the entire statement of facts and find no merit in these contentions.

To summarize all of the testimony on these points would unduly lengthen this opinion and contribute little if anything to the jurisprudence of the state. Suffice it to say that there was evidence on both sides; and the trial court, as trier of the facts, chose to believe and act upon the evidence offered by appellee. We hold that the trial court's findings of fact were supported by evidence of probative value, and that none of them was against the great weight and preponderance of the evidence. We therefore have no authority to disturb them.

Moreover, we find nothing in the purchase order, or in the plans or specifications, or in the code requirements, or in any other evidence in this record, to indicate an agreement on the part of appellee concerning the finish of the steel to be used in fabricating the tank. Nor do we find in the evidence any agreement on the part of appellee to furnish a trailer-tank that would satisfy Dow Chemical Company or any other customer of appellant. The evidence shows without dispute that the appellee could have used a perfectly smooth grade of steel in fabricating the tank if such had been contracted for or specified, but at substantially greater cost. Appellee had made several tank-trailers of this type for appellant and its predecessor and the smoother, more expensive grade of steel was not used in any of them.

Appellee admitted that it had expressly warranted this tank-trailer against faulty material and workmanship and, as stated above, produced sufficient evidence of probative value to support the trial court's conclusion that it had not breached that express warranty. Appellant contends, however, that there was an implied warranty that the tank-trailer would be suitable for a particular purpose, arguing that this purpose could not be fulfilled without washing the interior of the tank with water and that the pits, crevices and weld "splatter" on the interior would prevent removal of all of the water after washing. We find no evidence in the record that appellant ever informed appellee of the corrosive results of reintroducing anhydrous HCL into the tank when particles of water were still there, or that appellee had this knowledge from any other source. Not being able to show that appellee had such knowledge, appellant is in no position to urge that appellee impliedly warranted that the tank was fit and suitable for washing with water. It is not seriously denied by appellant that the tank-trailer was fit and suitable for the purpose of transporting anhydrous HCL. If it could be said that the evidence raised a question of an implied warranty, the trial court's conclusion that any such implied warranty was not breached finds ample support in the evidence and must be sustained.

Accordingly, we overrule all of appellant's points of error Nos. 3 through 12, except Nos. 5 and 6 which assert appellee's express warranty against faulty material and workmanship. Appellee concedes such warranty, and we have sustained the trial court's conclusion that the warranty was not breached. Therefore, points 5 and 6 present no reversible error.

Likewise, appellant's points 13 through 18, asserting the timeliness and completeness of its notice that it was rejecting the trailer, are conceded by appellee but contain no grounds for reversal.

By its points of error Nos. 19, 20 and 21 appellant complains of the trial court's alternative conclusion of law that if appellee did not comply with the contract upon initial delivery of the trailer, subsequent corrections brought it into compliance. Appellant says there was no evidence, and insufficient evidence, to support this conclusion and that appellee in open court waived any claim based upon the subsequent corrections, following which the court would not permit appellant to introduce evidence relevant to the matter. Appellee concedes the correctness of all three points and we agree. However, the other findings of fact and conclusions of law were sufficient to warrant the judgment rendered. Therefore, this alternative conclusion must be regarded as superfluity and harmless error.

Appellant contends, by its point of error No. 22, that the trial court erred in adhering to its finding that the value of the trailer was $5,600 in the face of newly discovered evidence that appellee sold the trailer after the trial for $10,000. The sufficiency of the evidence to support the original finding of the value of $5,600 is not challenged, and it appears from the undisputed evidence at the hearing of the motion for new trial that appellee sold the trailer to a third party for $10,000 a few days after date of the judgment, and that this sale was voluntarily rescinded the next month and the $10,000 returned to the buyers. There was also evidence that after it was returned to appellee the trailer was still worth only $5,600.

Appellant relies on Forshagen v. Payne, 225 S.W.2d 229, 231 (Tex.Civ.App., Fort Worth 1949, no writ). However, that was a jury case and the holding therein is not applicable here where the same trial judge who heard and decided the case also heard the motion for new trial. The grant or refusal of a new trial for newly discovered evidence rests within the sound discretion of the trial court, whose ruling will not be disturbed on appeal unless it be found that such discretion has been abused. 41 Tex.Jur.2d, New Trial, § 106, p. 255; House v. Filgo, 163 S.W. 373 (Tex.Civ.App., Dallas 1914, no writ); Carter v. Carter, 391 S.W.2d 546, 549 (Tex.Civ. App., Dallas 1965, no writ). We see no abuse of discretion here in overruling the motion for new trial and overrule point 22.

The judgment is affirmed.