**CITY OF WAHPETON, North Dakota, a Municipal Corporation, Plaintiff and Appellee,**

**v.**

**DRAKE–HENNE, INC., a corporation, et al., Defendants and Appellants.**

**Civ. No. 9067.**

Supreme Court of North Dakota.

April 2, 1975.

Johnson, Milloy, Eckert & Johnson, Wahpeton, and Bruce E. Bohlman, Grand Forks, for plaintiff and appellee, argued by Robert L. Eckert and Mr. Bohlman.

Dorsey, Marquart, Windhorst, West & Halladay, Minneapolis, Minn., and Vogel, Vogel, Brantner & Kelly, Fargo, for defendants and appellants Johnson, Drake & Piper, Inc., and Drake-Henne, Inc., argued by Jan Stuurmans, Minneapolis.

Degnan, McElroy, Lamb, Camrud & Maddock, Grand Forks, for defendant and appellant American Casualty Co., argued by James L. Lamb.

VOGEL, Justice.

This is an appeal from an order of the district court of Richland County denying the motion of the defendants under Rule 60(b), North Dakota Rules of Civil Procedure, to vacate a judgment against the defendants and grant a new trial on the issue of damages.

The judgment in question was entered pursuant to the majority opinion in a previous appeal reported at 215 N.W.2d 897 (N.D.1974).

## THE FACTS AND CONTENTIONS OF THE PARTIES

The action arose from a dispute over whether the defendant Drake-Henne, Inc., properly performed a contract to construct storm sewer, sanitary sewer, and waterworks improvements. A simultaneous contract between the City and a third party provided for pavement to be laid over the sewer and water mains. The trial court, sitting without a jury, found that the paving was defective due to failure of the sewer and water contractor to compact the soil beneath the paving to the degree required by the contract. Defendant Johnson, Drake & Piper, Incorporated, is the successor to Drake-Henne, and defendant American Casualty Company is surety on its performance bond.

Judgment was entered for $58,367.30. The defendants appealed, and the City, claiming the damages inadequate, cross-appealed. The appeals were filed in 1968 and argued in 1973. The delay was due largely to inaction by former counsel for the City. An opinion was written, a petition for rehearing was granted, and upon rehearing a majority affirmed the judgment of the trial court on the issue of liability but modified it as to damages and directed that judgment be entered in favor of the City in the amount of $517,791.60. It should be noted that the former appeal was taken under former Section 28–27–32, N.D.C.C., allowing trial de novo in the Supreme Court. Trials de novo have since been abolished. Ch. 311, 1971 S.L.

A petition for certiorari to the United States Supreme Court was made and was denied. 419 U.S. 986, 95 S.Ct. 245, 42 L.Ed.2d 194 (1974).

Judgment on remittitur was entered on May 2, 1974. The defendants thereafter

made a motion to the district court under Rule 60(b), N.D.R.Civ.P., to vacate the judgment and grant a new trial on the issue of damages.

The defendants' motion under Rule 60(b)(2), (5), and (6), is based on claims: (1) of newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59, N.D.R.Civ.P.; (2) that it no longer is equitable that the judgment should have prospective application; and (3) that other reasons justify the granting of relief from the judgment.

The motion to reopen is based upon affidavits of William H. DeButts, James L. Lamb, and John Drake, and upon a letter from Robert L. Eckert, city attorney of Wahpeton, to Mr. Lamb, dated June 18, 1974.

The letter of Mr. Eckert, written during settlement negotiations after the case was decided by this court, was a reply to an inquiry as to the amount of repairs to the pavement project since it was completed. Mr. Eckert stated that about $2,000 had been spent in 1970, about $6,400 in 1971, about $10,200 in 1972, and about $9,700 in 1973, and that $10,000 was projected for expenditures in 1974. He also stated that the city engineer estimated that less than 50 percent of the necessary repairs had been completed.

From these statements the defendants argue that total repairs necessary to the project would be slightly more than double the expenditures made through 1974, or about $80,000, and that therefore the judgment in favor of the City in the amount of $517,791.60 constitutes a windfall to the City, and the judgment should not be allowed to stand.

This argument ignores a portion of Mr. Eckert's letter stating that " . . . the City Engineer's office has been taking this on a year-by-year basis. Obviously the City is limited in regard to its funds available for repairs so it is prohibited from making all of the repairs at one particular time."

In further explanation of the letter and in opposition to the motion, the City submitted affidavits of Mr. Eckert and the City engineer to the effect that the repairs made were only patchwork, that the City had no way of raising the money necessary to do more, and that to restore the streets, sidewalks, and boulevards to the condition they would have been in if Drake-Henne had performed its contract according to its terms would cost in excess of $1,000,000.

The affidavit of Mr. DeButts, who was a witness at the original trial, shows that he spent approximately 4½ hours on August 12, 1974, driving over and inspecting the project, and that in his opinion the curb and gutter, pavement, and boulevard over or directly adjacent to trenches excavated by the defendant Drake-Henne had stabilized and would not significantly or substantially change in the future other than as a result of normal deterioration; that no further trenches would need to be disturbed or recompacted; that all present irregularities in the pavement can be repaired and maintained at nominal normal maintenance cost; and that only approximately 3,045 feet of curb and gutter had been replaced since the termination of the project on August 5, 1963.

In opposition to the DeButts affidavit the City presented affidavits of Arden Anderson, city auditor of Wahpeton, Ross Milne, a consulting engineer, and Adolph Tryba, city engineer for the City of Wahpeton. The Anderson affidavit indicates that there have been numerous breaks in city water mains which were directly caused by improper backfilling on the project; that there will be recurring problems due to curbs sinking and applying pressure to water and sewer lines; that some houses in one addition to the city were having trouble with private sewer line blockage resulting from improper backfilling; and that the City was being asked to compensate the private owners for losses.

The Milne affidavit was to the effect that the patching of the streets in the project

area did not take care of the underlying defects, which could be corrected only by a general reconstruction of the streets to improve traffic and correct grade and drainage problems; that maintenance costs are higher because of the defective streets; that until drainage is restored the curbs and gutters will continue to shift, which will cause increased breaking up of the pavement; and that to put the project into condition called for by the contract would cost in excess of $1,000,000. The affidavit of Adolph Tryba was substantially similar.

The affidavit of Robert Eckert, previously referred to, also stated that Wahpeton was exposed to great legal liability by reason of sinking sidewalks, which constituted a threat to the safety of the public, for which the City was liable.

The defendants vigorously assert that the affidavits, fairly read, show that the soil in the project area has now stabilized; that the City does not plan to tear up and reconstruct the entire project; that the damages attributable to the cost of recompacting were excessive in the amount of at least $133,000; and that the case should be reopened and a new trial granted on the issue of damages.

We do not so read the affidavits. It may very well be true that with the passage of some 11 years since the completion of the project natural compaction and partial or complete stabilization of the soil has occurred. But Wahpeton contracted to have the compaction done mechanically by Drake-Henne, and within a short period of time, not to have it done by nature over a period of 11 years. At the time the motion

was made, Wahpeton had already suffered 11 years of improper drainage, settling curbs, gutters, sidewalks, and pavement and the necessity of making patchwork repairs. The fact that Wahpeton has not spent half a million dollars or more in tearing up the project area and reperforming the contract does not prove absence of damages in excess of half a million dollars. It may only prove that Wahpeton did not have half a million dollars to spend. Even if the soil is stabilized, further expensive repairs apparently will be required because of damage resulting from lack of drainage due to Drake-Henne's breach of the contract.

The affidavit of Mr. Lamb was primarily a vehicle for the presentation of the Eckert letter referred to above, and the affidavit of Mr. Drake is described under the section discussing Rule 60(b)(5), below.

### Rule 60(b)(2)

The parties disagree as to whether the "newly discovered evidence" referred to in Rule 60(b)(2) must be evidence in existence prior to judgment but not discovered prior to judgment, or whether it may consist of evidence which came into existence after judgment. On this question there is a sharp conflict of authority, with most Federal cases apparently holding to the stricter rule [1] and most State cases allowing proof of events subsequent to judgment.[2]

This is a conflict which we need not resolve here, since the evidence offered by the appellants does not meet the requirements of the rule they propose. They ask us to adopt the rule stated in 58 Am.Jur.2d New Trial, Section 181, that evidence com-

---

1. Ryan v. The United States Lines Co., 303 F.2d 430 (2d Cir. 1962); Schuyler v. United Air Lines, 94 F.Supp. 472 (M.D.Pa.1950), affirmed 3 Cir., 188 F.2d 968; Brown v. Pennsylvania R.R. Co., 282 F.2d 522 (3d Cir. 1960); Kender v. General Expressways, Ltd., 34 F.R.D. 237 (E.D.Pa.1963); and Hughes v. Sanders, 287 F.Supp. 332 (E.D. Okla.1968).

2. Forshagen v. Payne, 225 S.W.2d 229 (Tex. Civ.App.1949), construed, however, in Chemical Leaman Tank Lines, Inc. v. Trinity

Industries, Inc., 478 S.W.2d 114 (Tex.Civ. App.1972), to apply to jury cases only; State v. Watrous, 177 Minn. 25, 224 N.W. 257 (1929); Bridgham v. Hinds, 120 Me. 444, 115 A. 197, 21 A.L.R. 1024 (1921); Johnson v. Rule, 105 Vt. 249, 164 A. 681 (1933); Powell v. Commonwealth, 133 Va. 741, 112 S.E. 657, 33 A.L.R. 541 (1922). It is to be noted that most of the State cases predate adoption of Federal Rule 60(b) and State rules modeled after it.

ing into existence after judgment may be considered if:

> " . . . Although the acts or events did not occur until after the trial of the case, yet the evidence is proof of a condition which existed prior thereto, and the probative effect of the testimony is to explain such condition."

As we have already indicated, the testimony by affidavit of Mr. DeButts and the letter from the city attorney do not prove that the contract was performed by the defendants or that the damage was overstated. They do not tend to prove the condition of the streets at the time of trial. They do tend to show the condition of the streets in 1974, after nature had done its work. Under neither rule as to what constitutes "newly discovered evidence" can this evidence be considered. They also show that the great disparity of expert opinion as to damages still exists.

It does not matter whether Wahpeton chooses to use its funds (or damages still to be collected) to repair its streets or whether it chooses to endure the defects in its streets, as it has done for 11 years, and use its money for other purposes. One who suffers property damage caused by the breach of duty by another may choose not to repair the property, without prejudice to his right to collect the damages. Hoenstine v. Rose, 131 Mont. 557, 312 P.2d 514 (1957). In such a case there is no "windfall."

### Rule 60(b)(5)

Appellants assert that they are entitled to relief under Rule 60(b)(5) because "it is no longer equitable that the judgment should have prospective application." Again, we are faced with a conflict of other authorities, and a lack of our own, on the question of whether a judgment for money damages can be "prospective." On the one hand, the Fifth Circuit, in Bros Incorporated v. W. E. Grace Manufacturing Co., 320 F.2d 594, 610 (5th Cir. 1963), 351 F.2d 208 (5th Cir. 1965), cert. denied 383 U.S. 936, 86 S.Ct. 1065, 15 L.Ed.2d 852 (1965), while deciding the case primarily under Rule 60(b)(6), held that relief "may be" available where the judgment has not been paid, under Rule 60(b)(5). But Bros involved factors which the Fifth Circuit repeatedly described as "unusual," "unique," and "involving a basic statutory infirmity." Among those factors were the prospective application of patent law, injunctive relief, and simultaneous litigation in many forums. Similarly, American Employers Insurance Co. v. Sybil Realty Co., 270 F.Supp. 566 (E.D.La.1965), which seems to hold that relief could be granted based on subsequent events, is not as clear as it might be, since it is founded in part upon Louisiana statutes. However, more persuasive cases holding firmly to the contrary, including Ryan v. United States Lines Co., 303 F.2d 430 (2d Cir. 1962), are collected in the annotation at 14 A.L.R.Fed. 309, 330–333.

Rule 60(b)(5) has been used principally in cases involving injunctive relief. See annotation 14 A.L.R.Fed. 309, 315. While it has been used occasionally in factual situations involving money damages, such use is rare and unusual.

Again, we need not decide whether a judgment for money damages can be "prospective," since we believe no showing has been made that "it is no longer equitable that the judgment should have prospective application," even if we should hold that a money judgment could be, in any sense, prospectively applied.

The affidavit of John Drake was presented for the sole purpose of showing that the financial condition of the defendant Johnson, Drake & Piper, Inc., would totally exhaust the assets of the corporation and render it insolvent. Actually, the financial statements attached to the affidavit show assets of $723,926.87 and liabilities of $775,928.43, which include a reserve for the full amount of the Wahpeton judgment. The liabilities also include items of $29,900 and $84,000 on notes of others apparently guaranteed by the corporation, without any indication as to the probability of whether the

corporation will be called upon to make payment under its contingent liability.

Appellants assert that the affidavit of John Drake was evidence which it was proper for the trial court to consider under Rule 60(b)(5). We hold to the contrary. In support of their contention the appellants cite an annotation at 15 A.L.R.Fed. 193, 226, where several cases are cited which refer to the size of the judgment or its effect on the defendant. But these references are mere casual comments made in the course of discussing the issues, and could scarcely be categorized even as dicta. Most of them concern the reopening of default cases, in which the merits have not been contested. In this case, as in most other cases, the effect of a money judgment on the parties is not a relevant factor to be considered on a Rule 60 motion.

### Rule 60(b)(6)

If relief is not forthcoming under 60(b)(2) or 60(b)(5), the appellants ask us to grant relief under Rule 60(b)(6), permitting the judgment to be reopened for "any other reason justifying relief from the operation of the judgment."

We recently discussed Rule 60(b)(6) in Hefty v. Aldrich, 220 N.W.2d 840 (N.D. 1974):

> "Rule 60(b)(6) provides an extraordinary procedure:
>
> '. . . an avenue for escape from the judgment, unhampered by detailed restrictions, and the courts have used this clause in a wide variety of situations.' In re Braun, 145 N.W.2d 482, 484 (N.D.1966).
>
> But the use of the rule is limited by many considerations. It is not to be used as a substitute for appeal. Ackermann v. United States, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950). It is not to be used to relieve a party from free, calculated, and deliberate choices he has made. In re Braun, *supra*. It is not to be used in cases where subdivisions (1) to (5) of Rule 60(b) might be employed—it and they are

mutually exclusive. Wright & Miller, Federal Practice and Procedure, Sec. 2864. Yet 60(b)(6) can be used where the grounds for vacating a judgment or order are within any of subdivisions (1) to (5), but 'something more' [Bros Incorporated v. W. E. Grace Manufacturing Co., 320 F.2d 594, 609 (CA5 1963)] or 'extraordinary' [Ackermann v. United States, supra] which justifies relief from the operation of the judgment must be present." 220 N.W.2d at 846.

We believe that the material presented in support of the motion to reopen the judgment does not satisfy the requirements stated in Hefty v. Aldrich, *supra*.

We recognize that we have in the past held that Rule 60 should be interpreted to accomplish justice [In re Braun, *supra*] and that it should be liberally construed [In re Estate of Jensen, 162 N.W.2d 861 (N.D. 1968)]. In re Braun, *supra*, and Sioux Falls Construction Co. v. Dakota Flooring, 109 N.W.2d 244 (N.D.1961), cited by appellants, were cases where the court was asked to reopen default judgments. In such cases the standards of discretion obviously are different from the standards in cases which have been fully tried, appealed, and finally determined. We favor trials on the merits and have reopened judgments under Rule 60 to permit them. Sioux Falls Construction Co. v. Dakota Flooring, *supra*. The parties here have had their trial on the merits.

In re Estate of Jensen, *supra*, involved a constitutional question brought into the case by new counsel and the rights of inheritance of illegitimate children, raising the spectre of a suspect unconstitutional classification.

As in Hefty v. Aldrich, *supra*, we find nothing sufficiently extraordinary to justify the extraordinary relief of reopening the judgment.

The Fifth Circuit, in Bros Incorporated v. W. E. Grace Manufacturing Co., *supra,* 320 F.2d 594, at 597–598, quotes Justice Story, in Ocean Ins. Co. v. Fields, 18 Fed.Cas. pp.

532, 539 (C.C.D.Mass.1841): "'It is for the public interest and policy to make an end to litigation * * *' so that '* * * suits may not be immortal, while men are mortal.'" As Judge Heen wrote in his memorandum of opinion of October 22, 1974, " . . . there should be at some point an end to litigation, . . . " Let this be it.

Affirmed.

PEDERSON and SAND, JJ., concur.

ERICKSTAD, Chief Justice (concurring specially).

I concur in this opinion affirming the trial court's denial of the motion to vacate the judgment under Rule 60(b), N.D.R. Civ.P., for the reasons stated therein, but in so doing, I do not wish to be understood as in any way affirming the opinion of Justices Teigen, Vogel, and Knudson reported at 215 N.W.2d 897 (N.D.1974) which I still believe to be in error.

PAULSON, J., concurs.