**William W. MELVIN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 89–86C.

United States Claims Court.

Feb. 12, 1988.

Ronald R. Snider, Washington, D.C., for plaintiff.

Michael J. Fink, Dept. of Justice, Washington, D.C., with whom was Richard K. Willard, Asst. Atty. Gen., for defendant.

## ORDER

ROBINSON, Judge.

This case is before the Court on defendant's motion for entry of supplemental protective order, plaintiff's motion for order controlling discovery of export controlled information, and plaintiff's motion to compel production of documents. For reasons hereinafter stated, the Court grants in part the defendant's motion for entry of supplemental protective order. Thus, the Court denies plaintiff's motion for order controlling discovery of export controlled information. Because the Court today enters its own supplemental protective order as part of this order, and because the Court expects the parties to proceed with discovery pursuant to the supplemental protective order, the Court denies as unnecessary and without prejudice, plaintiff's motion to compel.

### Facts

Plaintiff is the patentee and owner of U.S. patent 3,586,268, entitled "Instrument Flight System," U.S. patent 3,714,824, entitled "Instrument Flight System," U.S. patent 3,970,829, entitled "Composite Situation Analyzer and Instrument Flight System," and U.S. patent 4,040,005, entitled "Composite Situation Analyzer and Instrument Flight System." Plaintiff claims that the United States Air Force has incorporated flight control systems into the F-16 aircraft which embody the inventions of one or more claims of each of plaintiff's patents without plaintiff's consent. Plaintiff has pursued both Freedom of Information Act (FOIA) requests and administrative proceedings with respect to previous claims that other aircraft infringed his patents. Since plaintiff considered the responses he received to his FOIA requests and his administrative claims to be insufficient and incomplete, he has not pursued these remedies as to the F-16 aircraft claim.

Plaintiff avers that because of the sensitive nature of the information he seeks, the defendant is in sole possession of any records and documents concerning the nature of the alleged unauthorized use and manufacture by or for the defendant of the inventions claimed in the patents. Thus, plaintiff contends that he requires full and complete discovery from defendant of all documents and records relating to the manufacture, purchase, acceptance, and use of flight control systems as disclosed and claimed in plaintiff's patents. In his motion to compel, plaintiff seeks, at the minimum, the production of two avionic system manuals which are export controlled.

Defendant has maintained throughout this litigation that plaintiff's discovery methods amount to no more than a "fishing expedition" for a cause of action. Defendant argues that discovery is designed only to support a cause of action. Defendant contends that under plaintiff's theory of discovery, a patent owner may come to Court with a mere blind suspicion that the Government is infringing the patent and force the Government at great expense to investigate the owner's suspicion.

Despite its position, the defendant has engaged in substantial discovery. Under a stipulated protective order covering unclassified but restricted or limited-access information, entered by the Court on April 6, 1987, and which continues in effect, defendant supplied to plaintiff four pages of an F–16 manual which detail the screens used with the aircraft's flight control system. In December 1987, defendant produced an additional 600 pages of descriptive material on the F–16. Most recently, the defendant has served its responses to plaintiff's tenth set of interrogatories.

The defendant believes, however, that the April 6, 1987 protective order provides no adequate safeguards to control the dissemination of the export controlled documents that plaintiff now seeks. Defendant and its Department of Defense component refuse to produce to plaintiff two F–16 Avionic System Manuals, as well as other export controlled information responsive to plaintiff's discovery requests, until an "acceptable" supplemental protective order is entered by the Court. The parties have failed to stipulate to a supplemental protective order specifically tailored to cover export controlled information. The defendant, though, now moves the Court to adopt a proffered draft of a supplemental protective order.

Plaintiff opposes on two grounds the entry of defendant's proposed supplemental protective order. First, plaintiff argues that the protective order is inappropriate and that discovery should proceed pursuant to 32 CFR Part 250, which provides guidelines for the dissemination and withholding of technical data to U.S. contractors. Sec-ond, plaintiff contends that the supplemental protective order as drawn by defendant is excessively restrictive and unreasonable because it limits the number of experts to whom plaintiff may release information received under the protective order to three, and it requires the disclosure of plaintiff's experts to defendant, as well as the permission of the defendant before the release of the export controlled information to plaintiff's experts. In addition, the protective order prohibits the photocopying of any of the restricted information, although defendant has indicated it will provide as many copies, within reason, that the plaintiff requires.

### Discussion

■ Defendant's contentions that plaintiff is on a "fishing expedition" aside, the Court is of the opinion that plaintiff is entitled to some discovery to support its broad claim that the F–16 infringes his patents. There is considerable merit to plaintiff's position that without the discovery he seeks, he is stymied from adequately supporting his claim because defendant controls exclusively the access to technical data that would assist plaintiff in specifying by name and claim the accused devices. Thus, it is equitable that the Court allow discovery to proceed under its close supervision. During this discovery, the Court expects plaintiff to abide by his express representation that if the documentation he receives does not provide solid grounds that his patent claims are contravened by the F–16, he will dismiss in totality the instant case.

■ The Court is not persuaded that 32 CFR Part 250 permits plaintiff access to the information he seeks to compel. The purpose of Part 250 is to establish policy, prescribe procedures, and assign responsibility for the dissemination and withholding of technical data. 32 CFR § 250.1. Because public disclosure of technical data subject to Part 250 is "tantamount to providing uncontrolled foreign access," 32 CFR § 250.4(b), the Secretary of Defense may withhold from public disclosure any technical data with military or space appli-

cation in the possession of, or under the control of, the Department of Defense, if the data are subject to export control. 32 CFR § 250.4(a). Despite the authority to withhold technical data, the Secretary of Defense, as a matter of policy, routinely provides technical data governed by Part 250 to individuals and enterprises that are determined to be currently qualified U.S. Contractors, when the data relate to a legitimate business purpose for which the contractor is certified. 32 CFR § 250.4(c). However, if the data are for a purpose other than to permit the contractor to bid or perform on a contract with the U.S. Government, and the release of the data may jeopardize an important U.S. technological advantage, the Secretary will withhold the information. *Id.* DoD procedures implementing the Secretary's policy, 32 CFR § 250.5, provide that the controlling DoD office shall authorize release of technical data governed by Part 250 "to currently qualified U.S. Contractors only, as defined in § 250.3(a)" of Part 250. 32 CFR § 250.5(d).

A qualified U.S. contractor is "an individual or enterprise ... that, in accordance with procedures established by the Under Secretary of Defense for Research and Engineering, certifies, as a condition of obtaining export-controlled technical data ... from the Department of Defense, that: ... (2) such data are needed to bid or perform on a contract with the Department of Defense, or other U.S. Government agency, or for other legitimate business purposes in which the U.S. contractor is engaged, or plans to engage." 32 CFR § 250.3(a). As defined by CFR § 250.3(d), other legitimate business purposes "[i]nclude:

(1) Providing or seeking to provide equipment or technology to a foreign government with the approval of the U.S. Government (for example, through a licensed direct foreign military sale).

(2) Bidding, or preparing to bid, on a sale of surplus property.

(3) Selling or producing products for the commercial domestic marketplace or for the commercial foreign marketplace, providing that any required export license is obtained.

(4) Engaging in scientific research in a professional capacity.

(5) Acting as a subcontractor to a concern described in (d)(1) through (4) of this section; or

(6) Selling technical data subject to this Part in support of DoD contractors or in supporting of the competitive process for DoD contracts, provided such sales are limited solely to DoD contractors of potential DoD contractors who also are qualified U.S. contractors and provided such technical data are related to the purpose for which the qualified U.S. contractor is certified, or selling technical data to foreign contractors or governments overseas after receiving the required export license or approval by the U.S. Government."

Plaintiff makes a vigorous argument that he comes within the provisions of Part 250. However, given the sensitive nature of the technical data plaintiff seeks, and in deference to the Secretary of Defense, the Court respectfully disagrees with the plaintiff. A thorough, and reasonable, reading of Part 250 discloses that the Part applies to *commercial activities* which provide *services* to the U.S. Government or approved foreign governments, foster the economy through the sale or production of goods, or benefit the U.S. Government by expanding or improving existing technology (*See* 32 CFR § 250.3(d) which provides that engaging in scientific research in a professional capacity is a legitimate business purpose under Part 250). As legitimate as a suit to protect one's patent rights is, such a suit benefits primarily the patent owner. Even though the ability to sue on one's patent is intended to encourage invention, the Court determines that Part 250 does not contemplate a patent suit as a legitimate business purpose. Therefore, plaintiff cannot bring himself within the definition of a "qualified U.S. contractor."

Though the Court holds that plaintiff is not entitled under 32 CFR Part 250 to the technical data he seeks, plaintiff is not entirely foreclosed from the discovery of the technical data. Indeed, defendant states

that it will produce the requested documents once a supplemental protective order covering the documents is entered. Defendant has even moved the Court to enter defendant's proffered supplemental protective order to facilitate the exchange of the data plaintiff requests. Plaintiff opposes the entry of defendant's supplemental protective order and argues that the order is more restrictive than defendant's own regulations which permit the dissemination of technical data to qualified U.S. contractors, 32 CFR Part 250. Defendant contends that the DoD component requires the restriction contained in its supplemental protective order for plaintiff to have access to the export controlled information.

■ After a careful review of both the proffered supplemental protective order and 32 CFR Part 250, the Court holds that the supplemental protective order as offered by defendant is overly restrictive with regard to plaintiff's ability to release export controlled information to his expert witnesses. As drawn, defendant's supplemental protective order provides:

5. Plaintiff's counsel may disclose material and information designated as Restricted Information to no more than three (3) experts retained by plaintiff, provided, that the expert is a U.S. National and that prior to any such disclosure to an expert by plaintiff's counsel:

(a) the expert shall be designated and identified to Government counsel in writing;

(b) the expert shall read this Order and, at or prior to the receipt of Restricted Information, execute the following declaration which is to be forwarded to Government counsel: ...

(c) plaintiff's counsel must obtain permission from Government counsel in writing to make the disclosure to the designated expert. Permission shall not be withheld unreasonably. In the event that the parties are unable to agree, plaintiff may bring a motion to permit disclosure to a designated expert. No disclosure shall be made to a designated

expert until a ruling by the Court on said motion.

On the other hand, 32 CFR § 250.5(h) allows a qualified U.S. contractor to disseminate export controlled data without prior permission of the DoD to another currently qualified U.S. contractor within the scope of the certified legitimate business purpose of the recipient. A qualified U.S. contractor must seek permission from the DoD to disseminate the data only if the contractor desires to release the data for a purpose inconsistent with its own certification or in a manner that is not provided for expressly by Part 250.

Plaintiff argues that the disparities between the restrictions set forth in Part 250 and defendant's proposed supplemental protective order prejudice his rights to prepare for trial. Plaintiff contends that the disclosure requirements of defendant's proposed supplemental protective order is only attempt by defendant to conduct discovery in violation of RUSCC 26(b)(3).

Though the Court voices no opinion regarding plaintiff's position, and though the Court has held that plaintiff is not a "qualified U.S. Contractor," the Court sees no reason why plaintiff should be subject to greater restrictions regarding dissemination of export controlled data than those restrictions imposed upon U.S. contractors. Defendant argues that the Department of Defense needs to be assured that plaintiff's counsel honors the restricted nature of export controlled data. Defendant's argument, though, ignores this Court's contempt powers. Plaintiff's counsel's receipt of and dissemination of this export controlled data will be by an order entered by and enforced by this Court. By its terms, the order restricts plaintiff's counsel to dissemination of the data to persons who are U.S. nationals, and who, in turn, are bound by this Court's order. The order permits dissemination of the data for purposes of this litigation only and prohibits expressly the export of any of the information covered by the order. Should plaintiff's counsel make any disclosure of export controlled data which violates the terms of the supplemental protective order, plaintiff's counsel

may not only face criminal and civil penalties, but will be subject also to severe sanctions by this Court. In addition, should any person to whom the data is released violate the export restrictions referenced in the order, that person will be criminally or civilly liable.

The Court believes that its supplemental protective order is at the very least consistent with the Secretary of Defense's policies concerning the dissemination and withholding of export controlled information announced in 32 CFR Part 250 and that its order adequately safeguards the sensitive nature of the technical data which will be released to plaintiff's counsel. In fact, the Court has adopted defendant's restriction on photocopying to ensure that only a limited amount of the material is circulated. However, to allay plaintiff's fear that such a restriction amounts to impermissible discovery, defendant shall supply upon plaintiff's counsel's request sets of material, rather than individual documents. Since the defendant has represented to the Court that it will produce the documents plaintiff requests once a supplemental protective order has been entered, the Court is reluctant to exercise its powers under RUSCC 37.

Accordingly, it is ordered:

(1) Defendant's motion for entry of supplemental protective order is granted in part. The Court's supplemental protective order which will govern the discovery of export controlled information is attached to and made part of this order.

(2) Plaintiff's motion for order controlling discovery of export controlled information (under 32 CFR Part 250) is denied.

(3) Plaintiff's motion to compel is denied as unnecessary, and without prejudice to the plaintiff to renew the motion should defendant not provide discovery under the Court's supplemental protective order.