**Richard M. KRAMER and Patricia Kramer, individually and as parents and natural guardians of Katherine Kramer and Matthew Kramer, minors, Plaintiffs,**

**v.**

**The BOEING COMPANY and Pratt & Whitney Group, and operating unit of United Technologies Corp., Defendants.**

**Civ. 3–88–215.**

United States District Court,
D. Minnesota, Third Division.

Aug. 1, 1989.

---

See also, D.C., 705 F.Supp. 1392.

David Fitzgerald, Minneapolis, Minn., for plaintiffs.

William Flaskamp, Minneapolis, Minn., for Pratt & Whitney.

Timothy Schupp, Minneapolis, Minn., for Boeing.

## ORDER

JANICE M. SYMCHYCH, United States Magistrate.

This matter was before the court on June 14, 1989, for hearing on plaintiffs' motions to compel discovery from and for sanctions against Pratt & Whitney, Pratt & Whitney's motion to compel discovery from plaintiffs, and the parties' joint motion to extend the discovery schedule. Plaintiffs were represented by David Fitzgerald, Esq. Pratt & Whitney was represented by William Flaskamp, Esq. Boeing was represented by Timothy Schupp, Esq.

### PROCEDURAL HISTORY

This action was removed to the United States District Court on April 6, 1988, from Hennepin County District Court. As of September 12, 1988, a stipulated confidentiality order governed discovery in the case. A pretrial scheduling order was entered on October 26, 1988, which set the termination of the discovery period for November 1, 1990. On the same date, the court heard cross motions to compel discovery, and entered a written order on October 27, 1988, regarding those motions. The order required the parties to attempt a stipulated resolution of the outstanding motions, and if they were able to do so, to submit a stipulated order for signature by November 9, 1988. Such an order was submitted and formally entered on November 14, 1988. If any issues remained from the outstanding cross motions, they were set to be heard November 23, 1988. No party filed for hearing on that date, and the court thereby considered, and considers the prior cross motions to be no longer pending in any manner.

The stipulated order resulted in part in a review of Pratt & Whitney documents by plaintiffs' counsel and his retained consulting aviation expert. Some 60,000 documents were reviewed, including examination of microfiche, at Pratt & Whitney's

Hartford, Connecticut facility. Plaintiffs' counsel indicated which of those 60,000 he wished copied and delivered relying, in part, on the expertise of the consulting expert and his professional judgment of relevancy of a given document.

In a letter dated April 14, 1989, counsel for Pratt & Whitney notified plaintiffs' counsel that 220 of the requested documents were being withheld on five separate bases:

"1. Documents which relate to compressor disks other than the seventh stage.

2. Documents which relate to engines other than the JT8D–15.

3. Documents which relate to incidents other than the Cameroon incident.

4. Documents which contain proprietary data.

5. Documents which relate to foreign certifications."

A number of interrogatories were answered by Pratt & Whitney by interposing the same objections. Plaintiffs' now-pending Rule 37 motion followed. Pratt & Whitney's submissions to the court contain the 220 withheld documents for *in camera* review, along with a brief elaborating the foregoing grounds for nonproduction. Each of the *in camera* documents has been reviewed by the court. Plaintiffs seek an order compelling responses to specifically enumerated interrogatories and document requests; an order overruling the broad objections of Pratt & Whitney for purposes of these and future discovery materials; an order requiring Pratt & Whitney's authorization for release of materials submitted to the Federal Aviation Administration (FAA); and sanctions in the sum of $20,000 for failure to make discovery to plaintiffs.

The delays in exchanging discovery and other interceding matters give rise to the motion for extension of the pretrial schedule. Pratt & Whitney's motions to compel discovery from plaintiffs were resolved before hearing and are moot.

## DISCUSSION

### I. PRATT & WHITNEY'S OBJECTIONS

Pratt & Whitney maintains objection to production and copying of the 220 documents it has submitted for *in camera* review. But for these 220 documents, plaintiffs' selection from the 60,000 documents has been produced. Defendant interposed its objections as to these documents only after they were reviewed by plaintiff's counsel and his expert, and designated by them for production. Plaintiffs argue that a court order resulting in the production of these 220 documents, and an order overruling Pratt & Whitney's objections would resolve this, as well as future anticipated discovery disputes.

### A. RELEVANCY

The bulk of Pratt & Whitney's objections to production of the 220 documents is based on relevancy. This is a difficult objection upon which to prevail during the discovery phase of an action. The spirit of Rule 26(a) of the Federal Rules of Civil Procedure is that discovery be self-effectuating, without need to resort to the court, and that its scope be liberal, extending to all matters reasonably calculated to lead to admissible evidence. This standard is well-ensconced, and is generally known and understood by civil practitioners. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134 (8th Cir.1968); *Carlson Cos., Inc. v. Sperry and Hutchinson Co.*, 374 F.Supp. 1080, 1100 (D.Minn.1974); *Laker Airways Ltd. v. Pan American World Airways*, 103 F.R.D. 22 (D.C.Cir. 1984); *National Organization for Women, Inc. (NOW), St. Paul Chapter v. Minnesota Min. & Mfg. Co.*, 73 F.R.D. 467 (D.C.Minn.1977). One objecting to discovery on the grounds of relevancy carries the burden to sustain the objection. *Dellums v. Powell*, 642 F.2d 1351, 1364 (D.C. Cir.1980); *Wallace v. General Electric Co.*, 1988 W.L. 31069 (E.D.Pa.1988); *Gulf Oil Corp. v. Schlesinger*, 465 F.Supp. 913, 916– 17 (E.D.Pa.1979); *Martin v. Lamb*, 122 F.R.D. 143, 147 (W.D.N.Y.1988); *Robinson v. MacGovern*, 83 F.R.D. 79, 85 (E.D.Pa. 1979); *In re Folding Carton Antitrust Litigation*, 83 F.R.D. 251, 254 (N.D.Ill.

1978); 8 Wright & Miller, *Federal Practice & Procedure,* § 2173 at 542–44 (1970).

█ The first grouping of relevancy objections is that discovery pertaining to component parts other than the 7th-stage compression disk, and to engines other than the JT8D–15, is irrelevant. The upshot of the argument is that information as to the same compressor disk part, and the same engine model, is the only probative material on the engine failure in issue. This argument defies well-accepted tenets of proof, including basic notions of circumstantial proof. Plaintiffs are not limited in their search for proof to direct evidence of a flaw or dysfunction in the part or engine model in issue. *Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322, 1331 (8th Cir. 1985); *Strudl v. American Family Mutual Insurance Co.,* 536 F.2d 242, 246 (8th Cir.1976); *Lindsay v. McDonnell Douglas Aircraft Corp.,* 460 F.2d 631, 637–39 (8th Cir.1972) (plaintiff did not have to prove specific defect where circumstances suggested that airplane crash was probably due to manufacturing defect; the existence of a defect in a product may be inferred from circumstantial evidence.) *See also Siegel v. Mazda Motor Corp.,* 878 F.2d 435 (D.C.Cir.1989); *Bigony v. Goodyear Tire and Rubber,* 867 F.2d 608 (4th Cir.1989) (in product liability action when specific manufacturing defect is not ascertainable, the defect may be inferred from circumstantial evidence); 3 Devitt, Blackmar & Wolff, *Federal Jury Practice and Instructions,* § 72.03 (1987).

Moreover, the highly technical and sophisticated area of aircraft engineering surely entails multi-factored contributions to dysfunction. Oversimplification of the limits of discovery in highly technical products liability matters is quite sure to deprive plaintiffs of necessary avenues of proof. *Cf. Melvin v. United States,* 14 Cl.Ct. 236, 238 (1988) (without the discovery of two F–16 Avionic Systems Manuals, plaintiff stymied from adequately supporting claim, because defendant controlled exclusively all access to technical data that would assist plaintiff).

To this end, discovery extending beyond the exact component part in dispute should be allowed. The only case squarely on point is an unpublished opinion available on Westlaw. *SI Handling Systems, Inc. v. Heisley,* 1985 W.L. 4286 (E.D.Pa.1985) (defendant ordered to answer interrogatory including each and every system, assembly, subassembly, component, device, part and engineering drawing). *Cf. Schuyler v. United Airlines,* 10 F.R.D. 111, at 113 (D.Pa.1950) (court recognized that complex and expensive nature of aviation litigation requires liberal interpretation of rules relating to production of documents). *See generally,* D. Cathcart, *Aircrash Litigation Techniques,* § 7–4(B) (1985); S. Speiser, *Preparation Manual for Aviation Negligence Cases,* 12 (1958); and Night, *Products liability: Component Part Manufacturer's Liability for Design and Warning Defects,* 54 J. of Air L. and Com. 215 (Fall 1988).

Likewise, component parts have been found discoverable in many cases even when the product is similar, but not identical, to the product in issue. *Held v. Mitsubishi Aircraft International, Inc.,* 672 F.Supp. 369, 390–91 (Minn.1987); *Culligan v. Yamaha Motor Corp.,* 110 F.R.D. 122 (S.D.N.Y.1986); *Bowman v. General Motors Corp.,* 64 F.R.D. 62, 68 (E.D.Pa.1974); and *Self v. American Homes Assurance Co.,* 51 F.R.D. 222 (N.D.Miss.1970). In addition, precursors of the component part in issue, as well as the model of the product in issue have been held discoverable. *Swain v. General Motors Corp.,* 81 F.R.D. 698, 700 (W.D.Pa.1979). *But see, Uitts v. General Motors Corp.,* 62 F.R.D. 560 (E.D. Pa.1974) and *Prashker v. Beach Aircraft Corp.,* 258 F.2d 602 (3rd Cir.1958).

For a variety of reasons, these lines of cases are applicable here. First, and most importantly, plaintiffs are alleging an engine failure in this action, and have not confined themselves to the theory that a specific 7th-stage compressor disk, or that all 7th-stage compressor disks are defective. Nor have they limited their liability theory to anything peculiar about the JT8D–15 engine. Instead, they have, with the help of an apparently qualified aircraft

engineering expert, articulated a theory of multifactorial contributions to this engine failure.

Second, the review of the 220 *in camera* documents, and Exhibit 1 to plaintiffs' motion papers, shows that the FAA and Pratt & Whitney itself engage in this multifactorial analysis in evaluating the safety of a given engine, and in examining the causes of any dysfunction. The contents of the *in camera* documents are enough to cause an objective observer to seriously question the integrity of Pratt & Whitney's relevancy objections, and the motivations for its approach to discovery in this lawsuit.

A few examples of the materials discovered during the *in camera* review will demonstrate that plaintiffs' view is the correct one on this relevancy dispute:

    a. *Document MF4–30*

        objection—"Document does not relate to the JT8D–15 engine."

This document is an internal memorandum dated January 19, 1976 setting forth service problems known by Pratt & Whitney to be of concern to the FAA. Item 8.e. sets forth-"JT8D seventh-stage disk cracking."

This document is of obvious relevancy to this lawsuit, and the objection is so patently improper as to be shocking. This is especially so in the context of Pratt & Whitney's oral argument that other-stage disk failures are irrelevant because the seventh-stage is unique, as having a hub. Defendant's internal document acknowledging FAA concern about seventh-stage disk cracking is, without any question whatsoever, discoverable.

    b. *Document MF–7*

        objection—"Not relevant to JT8D–15 engine or 7th-stage compressor disk."

This document is an emergency telegram dated July 16, 1980 from the FAA to Pratt & Whitney regarding operators of certain aircraft with Pratt & Whitney engines other than the JT8D. It deals with disk cracks and refers to the immediate issuance of a new airworthiness directive. The telegram states that "The condition may exist in other model engines of the JT8D series—and that re-vised inspection compliance requirements are needed to detect cracks."

The new airworthiness directive covered engines including the JT8D–15 without restriction to any specific stage disk.

It is quite clear that although Pratt & Whitney may choose to argue the most restrictive view of this priority telegram, that it contains highly salient information for plaintiffs. It does not take a very liberal construction of the document to conclude that at least in significant part, it applies directly to the JT8D–15 engine, and all compressor disks.

    c. *Document 84–5*

        objection—"Not relevant because no inflight shutdown."

The document is a computerized log of in-flight shutdowns, and listed causes thereof. Numerous entries under the causation column reflect HPC damage (high compression stage disks) and blade-compressor problems.

Although the aircraft in issue here did not make it into the air on the day of the accident, that in no sense means that in-flight high-compression disk failures and related parts failures are irrelevant to prove the mode of dysfunction. Similar elements in part fatigue, or parts interaction, or the like would surely be permissible circumstantial proof in this case. Pratt & Whitney has again pointed to a decoy excuse for failure to produce the document.

    d. *Document 84–9*

        objection—"Not related to 7th-stage compressor."

The document is a memorandum from Pratt & Whitney to the National Transportation Safety Board, dated April 10, 1984, regarding Pratt & Whitney's own investigation of a 13th-stage disk rupture. The company, in the memorandum, requests the right to examine certain parts of the aircraft in order to complete its investigation. The items requested include the 7th through 13 stage disks.

Similarly, Pratt & Whitney investigated a fatigue fracture of the 8th-stage compressor blade during a February 17, 1984 inf-

light shutdown at Santa Ana, California. Its own documents substantiate that the company examined the 7th-stage compressor components as part of the investigation.

e. *Documents MF4-1 through 4-52*

Many of these documents relate to an ongoing dialogue between the FAA and Pratt & Whitney about FAA standards, and Pratt & Whitney's ongoing contention that the standards required "unnecessary over design." Such an ongoing difference over safety design of the parts in issue in this lawsuit, is clearly discoverable by plaintiffs.

In fact of all the 220 *in camera* documents objected to on relevancy grounds, only document 85-10 appears to fall outside the scope of Rule 26(a). It deals with aircraft engine emissions. Otherwise, the composite content of the remaining items convinces the court, without question, that plaintiffs are entitled to these items as documents reasonably calculated to lead to proper proof on the liability questions in this case. Plaintiffs have relied on a consulting expert in making their initial cut of these documents, indicating their good faith and care in selecting that which they deem necessary to their case. That plaintiffs' counsel, plaintiffs' expert, the court, and apparently Pratt & Whitney's in-house counsel have expended tedious hours in what has become a wholly unnecessary discovery dispute about relevancy is the stuff which taints and denigrates the viability of litigation as the dispute-resolution mechanism it was intended to be. This expenditure of client and court resources is a sad example of the problem.

As to the remaining relevancy issues raised, defendant claims that documents relating to other incidents, aside from this crash, and documents relating to foreign certification, are outside the scope of proper discovery. A review of the documents themselves, as well as the case precedent cited above, make these bases for objection nonmeritorious. Other similar incidents are often determined to be discoverable in products liability actions. *Peterson v. Auto Wash Manufacturing & Supply Co.,*

676 F.2d 949, 953 (8th Cir.1982); *McKinnon v. Skil Corp.,* 638 F.2d 270, 277 (1st Cir.1981); *Julander v. Ford Motor Co.,* 488 F.2d 839, 846–47 (10th Cir.1973). *But see, Hale,* 756 F.2d at 1332 (circumstances of other accidents too dissimilar); *Prashker v. Beech Aircraft Corp.,* 258 F.2d 602, 608–609 (3rd Cir.1958) (other accidents are irrelevant and excludable when similar circumstances have not been proved). For the reasons set forth, they are deemed discoverable here, also.

## B. PROPRIETARY

Pratt & Whitney objects to disclosure of a number of requested documents, stating that they are so proprietary that they are maintained in-house under rigorous security protocols, and with highly restricted access. Among these requested items, Pratt & Whitney objects to production of its design and quality assurance manuals. In addition, it interposes this objection to production of reports Nos. 4085, 5823, 5855 and 5880.

The issue presented on these items is governed by FRCP 26(c) and its balancing considerations of the relative burdens on the parties of disclosure and nondisclosure. Ordinarily, information which is of a confidential or proprietary nature is not, for that reason alone, outside the parameters of civil discovery. *Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556 (7th Cir.1984); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 101 F.R.D. 34 (C.D.Cal. 1984). *Gentron Corporation v. H.C. Johnson Agencies, Inc.,* 79 F.R.D. 415, 418 (E.D.Wisc.1978). The appropriate means of maintaining a party's business confidences is by a protective order. *Deitchman,* at 556. There, the Court remanded the action to the district court to fashion an order under Rule 26(c) which protected the interests of both parties). *Accord, Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.,* 529 F.Supp. 866 (E.D.Pa.1981). It should be a rare case in which even highly sensitive business confidences, relevant to a civil law suit, should be entirely unavailable through discovery. *Johnson*

*Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405 (N.D.N.Y.1973).

Here, plaintiffs state that they agree to incorporate even more stringent terms into the already existing protective order in this case, for these specific documents. They agree to limit disclosure of these items to plaintiffs' counsel and plaintiffs' consulting expert, and to require the subscription to the protective order of those viewing the documents. Any other use or further distribution of these specific items may be obtained only after written court order, upon motion and hearing.

■ Plaintiffs' suggestion that this issue is best resolved by such a protective order is correct. It is clearly evident from the context of this case that much of plaintiffs' discovery is related to the design of the high pressure compression portions of the JT8D engine. Pratt & Whitney does not have a design manual or quality assurance manual specific to the year in which the individual engine in issue was manufactured. It instead has what it calls "living manuals", which are continually updated by the removal of obsolete pages and the addition of current materials. It is clear the examination of these manuals falls properly within Rule 26(b), and that plaintiffs' counsel and consulting expert are entitled to copies, in order to conduct their careful examination of the contents, at their own speed and intensity. Because the engine in question was also a "living engine," with replacement parts installed over the years, Pratt & Whitney's argument that only 1971 manuals would be relevant is without logic.

As to the four numbered reports, Pratt & Whitney argues that they are of comparatively marginal relevance, given their high degree of commercial sensitivity. Report 4085 is the subject of many of these objections, including objections to its proposed updates in the 220 *in camera* documents. Some of those documents, pertinent to 4085, evidence the subject matter of the report as the design system for roto disks in turbojet engines. These documents describe the "purpose of the [included] data" as the designing of a system for establishing rotor disk lives. Many of the contents of 4085 are supplemental submissions to the FAA for approval. The high relevancy of this report to the substance of this action is unquestionable. The relevant engines include the JT8D line. It is patently unfair and improper to deprive plaintiffs of this discovery. The other three reports as to which objection is made deal with engine safety analysis, stress analysis and disk-life summaries, and blade containment procedures. Other documents in the *in camera* submission convince the court that the potential interconnectedness of these subjects is properly within the realm of discovery.

For these reasons then, the objection to production of these items on the grounds that they are highly proprietary is overruled, and disclosure is ordered pursuant to protective order.

## II. AUTHORIZATION

Plaintiffs seek an order compelling Pratt & Whitney to sign an authorization, indicating its nonobjection to release by the FAA of Pratt & Whitney materials submitted to the FAA. Plaintiffs' counsel asserts that such an order is necessary to reduce the substantial delay incurred in the Freedom of Information Act (FOIA) request process, because the FAA will seek Pratt & Whitney's concurrence before release of requested documents. Counsel for Pratt & Whitney argues only that such a procedure is unnecessary and that he has never heard of it. He stated that he knew of no reason that such an order would prejudice Pratt & Whitney. Plaintiffs' counsel relates his experience in similar litigation of considerable delays in processing a FOIA request through the FAA.

It appears that such an order will result in an economy of time in a discovery period already beset with delay.

## III. DISCOVERY SCHEDULE

The pretrial scheduling order in this case was issued on October 26, 1988. It provided that relevant documents should be exchanged no later than March 1, 1989. Those documents have not yet been exchanged. It is quite apparent that dis-

covery disputes have been almost perpetual in the interim, and that discovery is not yet firmly underway. More than one year has passed since the commencement of this action.

Good cause must be shown before a court modifies a Rule 16 scheduling order. Such orders and their enforcement are regarded as the essential mechanism for cases becoming trial-ready in an efficient, just, and certain manner. The control of these schedules is deliberately reposed in the court, and not in counsel, so that this end may be achieved. *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989); *Compagnie Nationale Air France v. Port of New York Authority*, 427 F.2d 951 (2nd Cir. 1970); *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C.1987); *Gestetner Corp. v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D.Me.1985). It bodes ill for a sizeable piece of litigation such as this when the pretrial schedule must be extended so early into the discovery period. It is clear that an expectation of continuing or further extensions cannot be countenanced, and that counsel must work together to accomplish discovery in the period that will be allotted.

Because the disputes about the documents here are predicate to the commencement of serious discovery, the motion to extend the schedule is based on good cause, and will be granted.

## IV. SANCTIONS

Plaintiffs' counsel moves for an award of $20,000 in costs and fees in connection with the motion to compel against Pratt & Whitney. That amount, in terms of an order pursuant to Rule 37(a)(4), is significantly high. Numerous circuit and district courts have held that such substantial sanctions, if awarded, must be supported by express findings setting forth the means for arriving at the total. *Batson v. Neal Spelce Associates, Inc.*, 765 F.2d 511, at 516–17 (5th Cir.1985), *remanded*, 112 F.R.D. 632 (W.D.Tex.1986); *aff'd* 805 F.2d 546 (5th Cir.1986). *Cf. Brown v. Federation of State Medical Boards*, 830 F.2d 1429,

1438–39 (7th Cir.1987); *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2nd Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); and Levin, *Achieving Balance in the Developing Law of Sanctions*, Fed.Jud.Ctr. (1987). Plaintiffs' counsel has not submitted any factual basis for arriving at such a sum. Ordinarily, itemized entries for billings related to the issue, made by affidavit, are the means used to substantiate requests for costs and fees.

Sanctions are awardable pursuant to Rule 37(a)(4) when the position of the losing party in a motion to compel is found not to be substantially justified, unless such an award would be unjust. *Transcontinental Fertilizer Co. v. Samsung Co., Ltd.*, 108 F.R.D. 650, 653 (E.D.Pa. 1985); and *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.*, 400 F.Supp. 273 (E.D.Wis.1975).

█ In this case, it would be unjust to deny plaintiffs' motion for sanctions. Such an order would amount to judicial tolerance of grossly unacceptable discovery practices. In this case, the most egregious are the not insignificant number of documents which bear a patently misleading objection. Although this does not rise to the same seriousness as the intentional destruction of documents, *cf. Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107 (S.D.Fla. 1987); *Carlucci v. Piper Aircraft Corp.*, 102 F.R.D. 472, 488 (S.D.Fla.1984), *aff'd in part*, 775 F.2d 1440 (11th Cir.1985); and *In Re Air Crash Disaster Near Chicago, Illinois*, 90 F.R.D. 613 (N.D.Ill.1981), the pattern in this case has the effect of concealment of highly relevant, properly requested discovery materials. Although the conduct here is not deserving of the harsh, dispositive sanctions imposed in these cases, it is clear that this sort of "culpable failure" to produce documents is properly the basis for Rule 37 sanctions. As in *Fautek v. Montgomery Ward & Co., Inc.*, 96 F.R.D. 141, at 145–46 (N.D.Ill.1982), plaintiffs' motion and the materials before the court justify the conclusion that Pratt & Whitney's agents have intentionally, recklessly, or negligently misled their adversaries and

the court. *See, National Association of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557–58 (N.D.Cal.1987); and *Alexander v. National Farmers' Organization*, 614 F.Supp. 745, 757 (W.D.Mo.1985). Plaintiffs have, as a consequence, expended obviously significant sums in pursuit of orders for discovery, and the court has engaged in tedious review of countless documents which should have been produced without objection. *See Olga's Kitchen of Hayward, Inc. v. Papo*, 108 F.R.D. 695, 711 (E.D.Mich.1985); and *Itel Containers Int'l Corp. v. Puerto Rico Marine Management, Inc.*, 108 F.R.D. 96, 106 (D.N.J.1985). Likewise, plaintiffs have been hamstrung in their ability to examine discoverable design and quality control manuals, and ongoing design reports submitted to the FAA, on account of improperly imposed objections on the grounds of proprietary interest, when plaintiffs were ready to enter into a highly restrictive protective order. In addition, defendant has paid only very loose attention to its obligation to provide full, informative, and truthful responses to the discovery requests of plaintiffs. It has responded with overbroad complaints of burdensomeness and irrelevancy. Even after plaintiffs took on the task of examining microfiche records provided by defendant, defendant withheld those isolated out by plaintiffs for copying.

This approach has detracted substantially from the orderly progression of this litigation, and is contrary to the spirit of both rules and precedent governing the pretrial phase of litigation. Accordingly, it is the conclusion of the court that plaintiffs are entitled to sanctions under FRCP 37(a)(4), in an amount to be determined by the court.

Therefore, based upon the foregoing, the briefs and arguments of counsel, and all the files and proceedings herein,

IT IS HEREBY ORDERED that:

1. Plaintiffs' motion to strike Pratt & Whitney's relevancy-related objections to the 220 documents submitted *in camera*, with the exception of document No. 85–10, is GRANTED;

2. Plaintiffs' motion to strike Pratt & Whitney's proprietary-based objections to the 220 document submitted *in camera*, subject to the entry of a revised protective order relating to those documents, is GRANTED;

3. Counsel for the parties shall submit to the court, no later than August 15, 1989, a proposed protective order pertaining to the documents covered in paragraph 2 herein, and providing that:

a) the documents to be produced shall be viewed only by plaintiffs' counsel and their consulting expert;

b) all who examine those documents shall first subscribe to the terms of the protective order, and agreeing to the jurisdiction of the court, should there arise the need to enforce the order; and

c) any other review or use of the documents be disallowed absent written court order, entered after formal motion and hearing thereon.

4. Plaintiffs' motion to compel Pratt & Whitney to provide it a written authorization in the form attached to plaintiffs' motion as Exhibit G, for the disclosure of documents by the Federal Aviation Administration is GRANTED;

5. Plaintiffs' motion to compel Pratt & Whitney to answer its first set of interrogatories Nos. 1, 14(b), 18, 26–28, 39, 43–45, 47–48, and 52, and plaintiffs' requests for production of documents Nos. 1–22, 28–32, 34–37, 43, and 51–57 is GRANTED;

6. Pratt & Whitney shall produce for plaintiffs copies of the 220 documents submitted *in camera*, as well as its reports 4085, 5823, 5855, and 5880, with the exception of document 85–10;

7. Pratt & Whitney shall serve its full, complete responses to the discovery ordered herein, in conformity with the Federal Rules of Civil Procedure, no later than September 1, 1989, or whenever any appeal of this order is determined by the District Court, whichever is sooner, unless it has first obtained a stay of that date from the District Court;

8. Plaintiffs' motion for Rule 37(a)(4) sanctions against Pratt & Whitney, in an

amount to be ascertained by the court, is GRANTED;

9. Plaintiffs shall, no later than August 15, 1989, serve and submit an affidavit, in itemized, specific entries, detailing the reasonable costs and fees incurred by them in connection with this motion; and

10. Pratt & Whitney's motion to compel discovery from plaintiffs is DENIED AS MOOT.